# LACKAWANNA COAL & IRON COMPANY.
## Appellant, v. ROBERT J. LONG.

### Division One, December 23, 1910.

1. **INJUNCTION AGAINST CONVEYANCE: Necessary Showing.** Unless the vendee by his suit in equity can compel the vendor to convey to him, he cannot by injunction restrain the vendor from conveying to a third party. As a condition precedent to such injunctive relief, the vendee's·bill, when challenged by demurrer, must state facts entitling him to specific performance of a contract of sale; and that must be the holding, whether he may or may not have damages at law for a breach of a contract of sale.

2. ———: ———: **Pleading: Ownership.** When the sufficiency of a pleading is challenged by demurrer, courts look not only to the material averments present, but to those absent. A petition by the vendee to enjoin the vendor from selling the land, should unequivocally allege that the vendor is the owner, else it does not state facts which would entitle the vendee to specific performance of his contract of sale, and therefore does not state a cause of action.

3. ———: ———: ———: **Demurrer: Exhibits.** A demurrer aims a blow at the face of the pleading and nowhere else. Exhibits attached to the petition against which a demurrer is leveled cannot be considered. So that where it is alleged that plaintiff by contract bought land from defendant, and those contracts are not set forth in full or their terms and covenants in substance, attached copies of the contracts cannot, when a demurrer is filed, be considered in aid of the petition's allegations.

Coal & Iron Co. v. Long.

4. ——: ——: ——: Specific Performance: Vague Con-
tract. Contracts for the sale of land, in order to be specifically
performed by a court of equity, must not be vague and uncer-
tain in terms and intendment, but clear, definite, certain and
complete. A bill alleging that plaintiff's assignor paid defendant
$2000 down for the purchase of certain land, and agreed to
pay $58,000 more "as soon as the title is perfected"—$18,000
in cash and the balance on or before five years—and no more—
does not plead a definite contract—since it says nothing about
abstracts of title, nothing about time for discovering and
curing defects, nothing about what kind of title was to pass
or what kind of deed was to be made, nothing about what
was to be done if incurable defects in title were found, and
nothing about security for the deferred $40,000 or interest—
all of which are material in specific performance. And a sup-
plemental agreement and a "proceeding in court" discussed in
the opinion are still more defective in material terms, and the
allegations in reference to them are mere conclusions of law,
and not a statement of ultimate facts.

5. ——: Allegation That Title Is Not Perfect, But Vendor
Claims It Is. A petition, which, in effect, alleges that defend-
ant sold the land to plaintiff and agreed to perfect the title, but
has not done so; that defendant now claims the title is perfect
and threatens to sell the land to another, and prays that de-
fendant be restrained from selling it, does not state a cause of
action for injunctive relief.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*Johnson & Lucas* for appellant.

The petition is good on general demurrer. Bliss
on Code Pleading (3 Ed.), sec. 425a; Stillwell v. Han-
son, 97 Mo. 585; Hickory County v. Fugate, 143 Mo.
79; Rodgers v. Fire Ins. Co., 186 Mo. 255; Railroad v.
Adams, 62 N. J. Eq. 661.

*Peak & Strother* for respondent.

(1) The copies of the contracts mentioned in the
petition and filed as exhibits with it, constitute no part
of it and cannot be used, in passing on the demurrer,

to eke out its insufficiency. Curry v. Lackey, 35 Mo. 389; Robinson v. Levy, 217 Mo. 510. (2) A demurrer admits only facts well pleaded. It does not admit the conclusions drawn by the pleader from the facts pleaded. It does not admit conclusions of law. Chemical Works v. Nemnich, 169 Mo. 395; Martin v. Castle, 193 Mo. 194; Donovan v. Boeck, 217 Mo. 83; Garner v. Meyer, 48 Mo. 319; Blaine v. Knapp & Co., 140 Mo. 241; Knapp, Stout & Co. v. St. Louis, 156 Mo. 352; Hand v. St. Louis, 158 Mo. 212; Kleekamp v. Meyer, 5 Mo. App. 448; Dannan v. Coleman, 8 Mo. App. 595. (3) The petition does not show that plaintiff is entitled to either an injunction or specific performance, and hence, does not state a cause of action. Ryan v. Dunlap, 111 Mo. 610; Goldthwait v. Lynch, 9 Utah 186; Taylor v. Williams, 45 Mo. 80; Wendover v. Baker, 121 Mo. 292.

LAMM, P. J.—Cast, *nisi*, on a general demurrer to its amended bill in equity, plaintiff stood, suffered judgment and comes up by appeal.

The question here is single and seeks the bill. Omitting caption and description by metes and bounds of the land in question, it best speaks for itself—thus:

"The above named plaintiff for its amended petition states that it is and was at all times hereinafter named a corporation duly organized and existing under the laws of Missouri; that on the 24th day of May, 1906, one E. O. Deshler, by written contract, a copy of which verified by affidavit is herewith filed, purchased of defendant, Robert J. Long, the following described real estate in Jackson county, Missouri, to-wit:

"A part of the southeast quarter of the southwest quarter of section thirty-six, township fifty, range thirty-three more particularly described as follows: . . .

"That said Deshler paid to said Long on said contract the sum of two thousand dollars and agreed by

the terms thereof to pay for said real estate the additional sum of fifty-eight thousand dollars, as soon as the title thereto was perfected, eighteen thousand dollars of which was to be paid in cash, and the remainder, on or before five years; that the title to said real estate was found to be defective, and said Long undertook to cure the defects thereof by a proceeding in court, and a supplementary agreement dated June 30, 1906, a copy of which is hereto attached, was entered into to that effect; that said proceeding has not become effective; that on the 20th day of September, 1906, plaintiff by deed duly recorded acquired said land from said Deshler; that said Long now claims that said title is perfect and that he has the right to retain said sum of two thousand dollars, so paid as aforesaid, and although said contract is still in force, and plaintiff is able, willing and ready to comply with the terms thereof as soon as said title is made perfect, and said Deshler and plaintiff have done so as far as was possible, defendant threatens to sell and convey said real estate to some one unknown to plaintiff.

"Wherefore, plaintiff prays that said Long be enjoined and restrained from conveying said real estate to any one except this plaintiff, and be required to convey the same to this plaintiff as soon as the title is perfected, and for such other and further relief as the premises may justify."

(a). Observe, the object and life of the bill is to tie the hands of defendant by injunction, so he cannot convey the land (assuming for the nonce he owns it) to any other than plaintiff. Now, the right of alienation, the *jus disponendi,* is of the essence of a fee and a vendee may not interfere with that right in chancery unless by virtue of a contract which should be specifically enforced. Therefore, a plaintiff, as a condition precedent to such injunctive relief as here asked, must (when challenged by demurrer) show a bill stating facts entitling him to specific performance. Otherwise,

the result might be that a vendor would be enjoined from selling or conveying to another than the complaining vendee, when, at the selfsame time, such vendee could not compel a conveyance to him—a proposition not in line with good conscience and good sense, opening a wide door for mischief; for a vendee by his injunction against alienation might thereby force performance on his vendor by moving in a circle when he could not have it by moving in a straight line to his goal by direct proceeding. I know of no policy of the law permitting a vendee to play such role. In equity it is no concern of his what a vendor does with his land, unless the vendee by his suit in equity can compel the vendor to convey to him. He may or may not have his damages at law for a breach of a sale contract, but it is clear that if he cannot have performance in kind, he should not tie up the land itself.

On this view of it, the bill should show the right to specific performance by pleading facts from which such right is bound to flow—he must show a contract capable of being performed. Moreover, when the question is the sufficiency of a pleading challenged by demurrer, courts look not only to the material averments present but to those absent. Judged of in that way, keeping in mind the necessity of a right in plaintiff to compel ultimate specific performance as a basis for the specific injunctive relief prayed, the demurrer was well ruled. This, because:

(b). Separating the bill into those elemental facts constitutive of a cause of action (and herein of those elements absent as well as present), it is plain there is no allegation that Long owned, or had title to, the land. It alleges Deshler, by written contract, purchased it of him. Speaking loosely, when A purchases anything from B there might be an inference that A could not purchase from B unless B owned the thing, the subject of the dicker and sale. So there are other

allegations faintly smacking of ownership and title in
Long, all of them more or less vague and implied—for
instance, one relates to curing defects in the title;
another to the claims of Long that the title was perfect;
yet others to Long's threats to sell and convey to
another person, to a payment of two thousand dollars
by Deshler to Long, to plaintiff's acquiring the land
from Deshler—so, the prayer of the bill (which we
ought not to look to on demurrer) is that Long be
restrained from conveying to another—from all of
which, by grace of great liberality in construing the
terms and intendment of the pleading, an implication
might arise that Long owned the land or had some title
thereto and contracted to sell as owner. But a plain,
bald, direct allegation of ownership, or claim of owner-
ship or of title, or of a sale contract as owner, as said,
is nowhere found. We are not dealing here with the
sufficiency of a bill *after* decree, but are considering a
challenge to the bill *in limine*, and the correct doctrine
is that more grace is extended in the former than in
the latter case. Now, whatever cause of action could
arise to a plaintiff at law for damages for a breach of
a contract of purchase and sale of land from one who
did not own the land or have title thereto, yet an alle-
gation of ownership and, hence, of potential ability to
presently perform seems material in a bill as a founda-
tion to the right to specific performance; for it is clear
equity that no performance will go, absent ability to
perform. It would be a vain thing to do that and it
is the boast of equity that it does nothing in vain.

(c). The bill is predicated on two contracts—one
supplementing the other. It is not pretended either
is set forth *totidem verbis;* neither is it charged that
their terms and covenants are fully pleaded in sub-
stance. It is alleged that copies are attached as ex-
hibits. We are not expressly invited by appellant to go
to them in aid of the bill, but the trend of argument, to
our mind, seems to indicate a hope or expectation we

might do so. It is elementary, however, in this jurisdiction (whatever the rule elsewhere) that on demurrer the allegations of the pleading struck at may be neither impugned nor aided by exhibits. A demurrer delivers a blow at the face of the pleading and nowhere else. Therefore, that which does not appear there is the same as if it did not exist, and what is hid away in an exhibit is out of the line of judicial vision on demurrer. [Hubbard v. Slavens, 218 Mo. 1. c. 622, and cases cited.]

(d). It is not necessary to cite authority to sustain the fundamental proposition that in specific performance a chancellor will not make contracts for parties. Parties must make their own, and the chancellor, moving in the orbit of a sound judicial discretion, performs them as made—not otherwise. From that premise is deduced the doctrine that contracts in order to be specifically performed must not be vague and uncertain in terms and intendment, but clear, definite, certain and complete. Whatever is provided in the contract for each party to do, in due order, should be stated by the pleader, and performance by the party seeking specific performance should be alleged and proved, unless his performance is prevented by a wrongful act or is waived in some way recognized by the law of waiver.

Testing the bill by these propositions, its insufficiency sufficiently appears. Because:

Speaking of the first contract, the bill alleges that Deshler paid Long $2000 down, agreed to pay $58,-000 "as soon as the title was perfected," $18,000 in cash and the remainder on or before five years. Does the pleader want us to understand that the contract contains nothing about an abstract of title, nothing about time for the discovery of defects, nothing about time in which such defects were to be cured, nothing about what kind of title was to pass, or what kind of a deed made, or which party was to take the laboring oar in perfecting the title, and nothing about what

was to happen if defects found proved incurable? That nothing was said about time of completed performance, except such as may be gathered from the vague and indefinite allegation, "as soon as the title was perfected?" So, the contract involved a large amount. Eighteen thousand dollars was to be paid when the title was "perfected," and forty thousand dollars on or before five years. Does the pleader want us to understand there was no contract provision relating to security for deferred payment, or for providing for evidencing it in any way, or regulating interest; or, if security was to be given in the form and nature of a mortgage, that the contract was silent on the terms and provisions of such mortgage? All these things are material in specific performance. The same equity that does nothing by halves will not perform blindly. Before it acts, it must see what is contracted to be done and do that, no more nor no less, or do nothing.

Referring to the supplementary contract attached as an exhibit, the bill alleges that the title "was found to be defective and said Long undertook to cure the defects thereof by a proceeding in court, and a supplemental agreement, dated June 30, 1906, a copy of which is hereto attached, was entered into to that effect." Does the pleader want us to understand that was all of the supplemental agreement? That there was nothing in it setting forth wherein the title was found defective, or whether the defects were such as could be cured? But the pleader says Long "undertook to cure the defects by a proceeding in court." Does the pleader want us to understand there was no limit of time placed upon this proceeding in the supplementary agreement, or no court or proceeding pointed out? But it is further alleged that "said proceeding has not become effective." What does that mean? Does it mean that Long brought the right kind of a suit in the right court at the right time, but failed to get a decree and was cast in the case, or does it mean that he got a de-

cree which was void for some reason, or does it mean that the defects were found not to exist or that they were incurable, or that a decree was entered not broad or deep enough to reach *all* the defects? Again, it is alleged that "Long now claims the title is perfect," that the contract is "still in force and plaintiff is able and willing to comply with the terms thereof as soon as the said title is made perfect and said Deshler and plaintiff have done so so far as was possible." What do those allegations mean? Do they mean that defendant insists he has a good title and is ready to transfer it, but that plaintiff claims the title is bad and he is not willing to receive it until it is made "perfect?" If that be the meaning, and it seems to be, then plaintiff states himself out of a court of equity; for if the title tendered by defendant is bad and the bill (as here) does not show it can be perfected, it would be droll equity that would tie up the land by a writ of injunction until "such title is made perfect." That would give a most unconscionable advantage to the vendee; for the time might run to the *Greek kalends*. With his injunction in force, he could lie by for many years refusing to take the title tendered and speculating on the rise of the land, thereby doing an injury to his vendor the latter was powerless to prevent. The maxim is: Equity will not decree inequity. "A judge," says Sir Edward COKE (3 Coke's Inst. 147), "should have two salts—the salt of wisdom, lest he be insipid; and the salt of conscience, lest he be devilish." A judge issuing a writ of injunction as prayed in this bill on the allegations there made, would have neither salt.

It would seem the vendee's remedy in such event would be at law for damages. A vendee may have performance of the part that can be performed and his damages for the part not performed if he choose that course, but this bill does not run on any such theory. It runs on the theory that plaintiff refuses to perform by taking the offered title and makes no allegations

upon which damages could be predicated and none showing the title is susceptible of being made perfect.

The word "defective," relating to the title, and the word "effective," relating to the court proceeding, and the word "perfected," relating to the title, and the phrase "as soon as the title is perfected," and the phrase "was entered into to that effect," referring to the supplementary agreement, and the phrase "undertook to cure the defects," without mentioning what the defects were or in what way he "undertook" the cure— one and all are legal conclusions. They do not purport to constitute the *facts* constitutive of a cause of action, but plainly import mere conclusions of the pleader and conceal rather than disclose the ultimate and substantive facts. If the facts had also been stated, such words and phrases would not have vitiated the pleading, but standing alone they do not state the substantive facts giving a cause of action.

A demurrer admits facts pleaded only when they are well pleaded and are not absurd or impossible. It does not admit legal conclusions. [Mallinckrodt Chemical Works v. Nemnich, 169 Mo. l. c. 397, *et seq.*, and cases cited; Martin v. Castle, 193 Mo. l. c. 194.] In Donovan v. Boeck, 217 Mo. l. c. 83, we said: "It" (the demurrer) "does not admit the soundness of conclusions of law in the plea, nor mere conclusions of the pleader on the facts constitutive of the cause of action." In Dillon v. Barnard, 21 Wall. l. c. 437, it was ruled that a demurrer does not admit matter of inference and argument, however clearly stated. "The several averments of plaintiff in the bill as to his understanding of his rights," says FIELD, Justice, "and of the liabilities and duties of others under the contract, can, therefore, exert no influence upon the mind of the court in the disposition of the demurrer."

We see no error in the ruling on the demurrer. Let the judgment dismissing the bill be affirmed. It is so ordered. All concur.