# W. E. CURTIS, Respondent, v. SAMUEL E. SEXTON, Appellant.

### Kansas City Court of Appeals, January 24, 1910.

1. **OPTION CONTRACT: Election: Time.** Where a party purchasing land from another, contracts with the other that he may sell back to him on a day named, "if he so desires and requests," time is of the essence of the contract and he must make his election that day.

2. ———:· ———: **Tender.** The agreement to buy and the agreement to sell being mutual covenants, if the seller wishes to enforce the contract it is necessary that he take the initiative and tender a deed to the buyer on the day he elects to purchase.

3. ———: ———: ———: **Repudiating Contract: Asking Further Time.** If the party entitled to a tender repudiates the contract, a tender is not necessary. But if the seller notifies the purchaser that when the day for sale arrives, naming it, he will elect to sell, and the purchaser replies by expressing doubt as to that being the day and asking further time if it is, such facts do not constitute a repudiation of the contract and will not excuse a tender.                                        •

4. ———: ———: **Tender: Place.** Where the contract of sale is made at the place where the land is situated and where the person to whom the tender is to be made, resides, the tender should be made at that place.

5. **IDENTITY OF ACCEPTANCE: Contract.** The acceptance by election must be of the very terms of the contract; otherwise it is not a valid exercise of the option.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

REVERSED.

*A. F. Evans* for appellant.

(1) There is an important distinction between a perfected contract and an option contract. Hollman v. Conlan, 143 Mo. 369. Parties cannot lie by and speculate on their own contracts. Brown's Ex. v. Massy,

138 Mo. 519; Durrett v. Hook, 8 Mo. 374; Waterman v Banks, 144 U. S. 394; Armour v. Cason, 95 Mo. App. 426. (2) If the contract does not fix the time for performance the law implies a reasonable time. Blake Mfg. Co. v. Gaeger, 81 Mo. App. 239; Bryant v. Saling, 4 Mo. 522. To make a valid contract the parties must assent to the same thing in the same sense. Perkins v. School District, 99 Mo. App. 483; Cockrell v. Bopp, 106 Mo. App. 355. (3) An acceptance of an option must in every respect meet and correspond with the offer, neither falling within, nor going beyond the terms proposed, but exactly meeting them at all points and closing them just as they stand. Potts v. Whitehead, 23 N. J. Eq. 516; Henry v. Black, 213 Pa. 620; Glass v. Rowe, 103 Mo. 513; Stembridge v. Stembridge, 87 Ky. 91; Potts v. Whitehead, 20 N. J. E. 55; Tilton v. Sterling, etc., Co., 28 Utah 173; Egger v. Nesbitt, 122 Mo. 667; Brunner v. Wheaton, 46 Mo. 363. (4) If the option agreement ever became mutual and binding, the defendant and Bracking became interested in the land as tenants in common, and the contract could have been specifically enforced. R. S. 1889, sec. 8844; R. S. 1899, sec. 4600; Real Estate Co. v. Spelbrink, 211 Mo. 671. (5) A deed to former partners, made after dissolution of the partnership, will make them tenants in common. Allen v. Logan, 96 Mo. 591. (6) One tenant in common cannot dedicate the property to public use, grant an easement, or bind the other without his consent, so as to affect his rights. St. Louis v. Gas Light Co., 96 Mo. 197; Nalle v. Thompson, 173 Mo. 595. (7) If the option agreement had not already been accepted, according to its terms, then no contract existed, and neither plaintiff's nor defendant's rights were in anywise affected by Bracking's letters. Tilton v. Sterling C. & C. Co., 28 Utah 173. (8) Mere refusal by one party to a contract, before performance is due, will not obviate the necessity of tender by the other party. Matterson v. U. S. & C. L. Co., 103 Minn.

407; Abbott's Trial Evidence (2 Ed.), 921; Tilton v. Sterling C. & C. Co., 28 U. 173. (9) One partner cannot bind another on matters not connected with the partnership business. Rimel v. Hayes, 83 Mo. 200; Huyssen v. Lawson, 90 Mo. App. 82. (10) No admission or declaration made by a partner, after dissolution of the partnership, and notice thereof, is competent evidence against a copartner, although relating to a contract which arises during the partnership. Abbott's Trial Evidence (2 Ed.), p. 271; Flowers v. Heim, 29 Mo. 324; Brady's Admr's v. Hill, 1 Mo. 315. Little v. Ferguson, 11 Mo. 598; Evangelical Synod of North America v. Schoeneich, 143 Mo. 652; Pope & West v. Risley, 23 Mo. 185. (11) After evidence of partnership, and that it included the affair in question, has been given, an admission or declaration made by one partner during continuance of partnership relations, and concerning the partnership affairs during the relation, is competent against all, and has the same effect as if made by all. Abbott's Trial Evidence (2 Ed.), p. 269; Katy v. Kyle, 47 Mo. 346; Am. Iron Mt. Co. v. Evans, 27 Mo. 552. (12) In all respects other than for a collection of debts and disposal of assets, the agency of partners for each other terminates with dissolution. Abbott's Trial Evidence (2 Ed.), p. 271.

*Robert F. Porter* for respondent.

(1) Where one of the parties declares his inability to fulfill his contract, a tender to him is unnecessary. Comstock v. Lager, 78 Mo. App. 390; 28 Enc. Law 9 (Tender); Clark v. Weis, 87 Ill. 438; Land Co. v. Baylor, 71 Mo. App. 99; McManis v. Gregory, 16 Mo. App. 382; Schilb v. Pendleton, 76 Mo. App. 454; Whelen v. Reilly, 61 Mo. 565; Mastin v. Grimes, 88 Mo. 489; Girard v. St. Louis, 123 Mo. 371; Blanton v. Kentucky Dis. Co., 120 Fed. Rep. 318; Dichman v. Dichman, 49 Mo. 107; Bucklen v. Hasterlick (citing Dichman), 134 U. S. 81. (2) The dissolution of a partnership does

not change the rights and obligations of the members under existing contracts. Bryant v. Hawkins, 47 Mo. 410; Abbott, Trial Practice, 272; 1 Bates on Partnership, sec. 707; Cady v. Shepherd, 11 Pick. 400; Bank v. Henschen, 52 Mo. 207; Bank v. Altheimer, 91 Mo. 191. (3) Admissions by one partner are binding on another even after dissolution. Payment by one will toll the statute of limitations as to the other. Maddox v. Duncan, 143 Mo. 621; Vernon County v. Stewart, 64 Mo. 408. The rule applies as to other admissions. Schierbaum v. Schemme, 157 Mo. 21; 1 Greenl. on Evid. (15 Ed.), sec. 174; Whitcomb v. Whiting, 2 Douglass 652; St. L., etc., Co. v. Fowler, 142 Mo. 676; Kelsey v. Bank, 166 Mo. 171. (4) A tender to one joint obligor is a tender to all. Warder v. Ardell, 2 Wash. (Va.) 282; Oatman v. Walker, 33 Me. 67; Clark v. Patton, 4 J. J. Marsh (Ky.) 33; Carman v. Pultz, 21 N. Y. 547; Dawson v. Ewing, 16 Sarg. & R. 371; Henry v. Mount Pleasant, etc., 70 Mo. 504; Bartal v. Eckert, 50 Ohio St. 32; Dellor v. Holland, 57 Ohio St. 507; Green v. Rick, 121 Pa. St. 139; McCling v. Howard, 45 Mo. 365; Wetmore v. Couch, 150 Mo. 682.

*Warner, Dean, McLeod & Timmonds,* also for respondent, on motion for rehearing.

ELLISON, J.—Defendant and his partner Bracking executed a written contract to plaintiff, in their partnership name, agreeing to purchase a one-sixteenth interest in certain lands owned by plaintiff in Kansas City, Missouri, at a certain date, if plaintiff desired them to do so. Plaintiff, claiming a breach of the contract, brought this action for damages against defendant alone. He recovered judgment in the circuit court. The contract reads as follows:

"Kansas City, Mo., Jan. 5th, 1888.

"In consideration of W. Espy Curtis purchasing from us one-sixteenth interest in Madison Square, an addition to Kansas City, Mo., we guarantee and prom-

ise to purchase it back from him October 6th, 1890, if he so desires and requests, at the price he paid us for same, paying him back all the money he paid into and for same with interest at the rate of 10% per annum from date of purchase. . . ."

Plaintiff lived in Cincinnati, Ohio. He alleges in his petition that he performed all his part of the contract; that he had paid defendant and Bracking, his partner, for the property an aggregate sum of $2878.37. He further alleges that prior to the 6th of October, 1890, the date he was to elect whether he would sell the land back to defendant and Bracking, he notified them that he desired to sell and that he requested them to send to him such form of deed as they desired him to execute. That they refused to furnish such form and made known to him that they would refuse to purchase back. He further alleges that on the day he was to elect (the 6th of October, 1890) and at different times afterwards, he notified them that he desired them to purchase the land, and they refused to do so. He then alleges that as defendant and Bracking refused to make out a proper deed and send to him, he, on the 29th of November, 1890, executed a deed to them and tendered it to each of them, and demanded of each of them the money he had paid for the land, and interest up to the 6th of October, 1890, the day he was to elect; but they each refused the deed and refused to pay him the money demanded. It was then further alleged that there was a prior mortgage or deed of trust on the land and that since the foregoing the property had been sold under such incumbrance to third parties.

The trial, from the result of which the present appeal was taken, was the second. At the first trial only the evidence for plaintiff was heard when the trial court sustained a demurrer thereto and rendered judgment for defendant, and plaintiff appealed to the Supreme Court where that judgment was reversed and the cause remanded. The present appeal was taken

to the Supreme Court and was transferred to this court by reason of the jurisdiction of this court having been increased to a sum more than that here involved. The case on the first appeal will be found reported in 201 Mo. 217. Its full history, with much of detail included in its statement, is quite lengthy and much involved. We refer to that report where will be found much information as to the controversy clearly stated and put into a short space. On that appeal, as already said, only the evidence for plaintiff had been heard and the Supreme Court, of course, could only treat it from that standpoint. One of the principal points made at the last trial, and on this appeal, was not considered by the Supreme Court, because of the essential and important difference in the evidence at the two hearings; that is, the matter of election of plaintiff to sell back and of his tender of a deed.

Coming to the evidence to sustain the allegations of the petition as stated above: we find that plaintiff was in the State of Ohio and defendant in Kansas City, Missouri, and that Bracking at the time of the correspondence to be referred to was a travelling salesman from Cincinnati and that the matter of election in pursuance of his option to sell and the matter of tender prior to October 6, 1890, were all made by letters. The letters plaintiff wrote to either Bracking or defendant were not produced, defendant stating he had not received any. But plaintiff had preserved what he calls memoranda copies, some blanks appearing. The first one to defendant is dated the 13th of September, 1890, and reads as follows:

"Shall have to let my int. in Mad. Sqr. go as per agreement with you and Frank. Oct. 6, 1890, is the date named in agreement for my decision, but I now give you notice that on that day I shall be ready to receive the cash and turn my interest over to you and Frank or to whom you may order. You can get figures off your books."

In the third one, dated 29th September, 1890, he wrote: "Not yet rec'd answer. Shall act on the written agreement between you and Frank and myself concerning Mad. Sq. Oct. 6, '90. All money ——— for it and 10% per an. I shall be ready to transfer title to you and receive the cash on Oct. 6, 90."

The fourth one is dated the 30th September, 1890. He wrote, according to his memorandum, as follows: "Giving amount due me 3061.61 and directed him to make deed and attach it to draft (send per exp. or through bank) draft to be delivered to me when I sign the deed."

The fifth one is dated the 10th of October, in which he inquired as to "defendant's intention in the matter."

Plaintiff testified that he then, on the 20th of November, 1890, came out to Kansas City and talked with defendant. That defendant told him that "the reason he would not make out a deed and take it back was because he had no funds with which to pay it." Finally a tender of a deed was made by plaintiff, in December, 1890, and this tender is continued with the petition in the cause.

With the foregoing facts established by the record, has plaintiff a case entitling him to a judgment against defendant? In the first place he had the contract of defendant and Bracking as a partnership, whereby they agreed to buy the property back from him October 6th, 1890, if he so requested, at the price he paid them and ten per cent interest. This was an option to sell to them, to be exercised by him at a certain time and if not exercised at such appointed time, the right ceased, as in such case time was of the essence of the contract. [Hollman v. Cannon, 143 Mo. 369; Stembridge v. Stembridge, 87 Ky. 91; Potts v. Whitehead, 20 N. J. Eq. 55; Waterman v. Banks, 144 U. S. 394; Guss v. Nelson, 200 U. S. 298.]

Otherwise, one could make uncertain, and use for

speculative purposes, a contract manifestly designed to be performed or else annulled at a definite time. If he could delay beyond the time, the obligors could never know when their obligation ceased and could not keep in proper control of their general business affairs and engagements; and he could purposely delay to see if a possible rise in values would make an acceptance profitable.

Having the option to sell, if he desired to hold defendant to the obligation to buy, it was his duty to make a tender of his deed at Kansas City, the place where defendant resided, where the contract was made and was to be performed, and where the property was situated. Instead of so doing, whatever he did in that direction was from a distant State as a base and with correspondence as a means. And the correspondence shows a total failure to make a tender as that term is understood in the law. It was his duty to make out a proper deed and offer it to the obligors on their paying the price agreed upon. Where the promises to convey and to pay the price are mutual and dependent covenants, the vendor must tender a deed so that the vendee, on payment of the price "can lay his hands on the deed as his." [Olmstead v. Smith, 87 Mo. 602; McLeod v. Snyder, 110 Mo. 298.] But here we have plaintiff writing a letter to defendant before the day of election under the option, telling him he will elect to sell and asking him to make out a deed and forward to Cincinnati and he, plaintiff, would execute on the payment of the price which of course he knew could only be ascertained by calculation and settlement. Thus was cast upon defendant the burden of getting up the deed and taking it to Cincinnati and there receive the price, or sending to some agent there whom he might employ for that purpose. It may be said that as the obligation in the contract after plaintiff elected to sell, became mutual, obliging defendant to pay as well as plaintiff to convey, it was as much

defendant's duty to make the deed and go to Cincinnati as it was plaintiff's to make it and come to Kansas City. That depends altogether on who is the moving party, who is taking the initiative. The party desiring and intending to go into court to enforce a contract, has the burden on himself to prepare for such move. He must put himself in position to be able to show that he has done or offered to do all on his own part which would cast upon the other party the duty of doing what he is undertaking to have the court force him to do.

But it is said that though the duty to make an election and a tender is as we have stated it, yet that defendant repudiated the contract to purchase and so informed plaintiff. It is indisputable law that though in a case where a tender is required of the party initiating proceedings in court to enforce a contract, if the party to whom the tender should be made has shown in some effective way that he will not accept it, then, it having thus become a useless act, it need not be performed. But what are the facts in this instance? Plaintiff makes no pretense that this defendant ever sent or wrote anything to him on that subject until long after—perhaps two months—the tender should have been made, and that was in Kansas City, where plaintiff stated he talked with defendant. He however claims that when he wrote to Bracking (the same as he wrote to defendant) notifying him he would elect to take the option of selling, Bracking repudiated the contract by answering and stating he was unable to, and could not, buy.

The question is discussed at length by the respective counsel as to when the admission of one of two joint obligors, or of one partner, or one of several jointly interested as devisees, will be admissible in evidence or binding upon the others. Plaintiff insists that though the partnership between defendant and Bracking may have been dissolved, yet, as the letters

of the latter pertained to partnership business, his statement of his inability to perform the contract amounted to a repudiation of the contract by both, and made a tender unnecessary as to either.  He likewise contends that as to parties jointly interested, the admission of one is the admission of all.  His view being embodied in the following quotation from 1 Greenleaf on Evid. (15 Ed.), sec. 174: "But in the absence of fraud, if the parties have a joint interest in the matter in suit, whether as plaintiffs or defendants, an admission made by one is in general, evidence against all.  They stand in this respect in a relation similar to that of existing partners.  Thus also the act of making a partial payment within six years by one of several joint makers of a promissory note, takes it out of the statute of limitations."

Defendant, on the other hand, claims that the partnership had ceased and plaintiff knew it; that therefore no admission or act of Bracking could affect him. In support of this he cites Evangelical Synod v. Schoeneich, 143 Mo. 652; Flowers v. Helm, 29 Mo. 324.

Regardless of these contentions, it is well to look at the facts disclosed by the record concerning the claimed admissions by Bracking and see if the position taken by plaintiff has any application to such facts.  Bracking's letters did not repudiate the contract in the sense that he and defendant disclaimed it. The first of these is dated the 26th of September, 1890, and reads as follows:

"NEWARK, OHIO, Sept. 26, 1890.
"MR. W. E. CURTIS, Cincinnati, O.

"Dear Sir:  Yours of 18th received.  I am under the impression and I think if you will read the agreement that you will find I am correct, that we agreed to buy your interest back in 3 years from date of agreement which was January or February, 1888.  That would give us until January or February, 1891, to raise the money—to take your interest back.

"That is what I calculated on and I could not possible raise the money by Oct. 6th. In fact I left Kansas City about as near "broke" as any fellow you ever saw and my only show to take your lots off your hands will be to sell building in K. C. which I expect to do in the spring if not before.

"I landed in Cincinnati with only $15 to my name in cash and my salary is just about large enough to live on and support my family. So I hope you will make arrangements to give us a little more time. I don't know how Mr. Sexton is fixed but I think he is pretty close run for cash too just now. I hope you will appreciate my circumstances and present condition and raise the money for your Oct. payment some other way and give us a little more time."

This was not a waiver of tender by a repudiation of the contract. It was not a statement of inability to perform on his part, in such manner as to excuse plaintiff from making a tender. In the first place it shows that he did not think the time had arrived under the contract at which the purchase was to be made. It is true he says that he could not raise the money by the 6th of October, and asks for further time if that is the contract date for purchase, and states sources from which he could raise the money. He also refers to defendant in a way to show that he probably could make the purchase. It is manifest that there was no repudiation of the contract, nor statement excusing plaintiff from making a tender: Hunt on Tender, secs. 417, 418.

The next letter is as follows:

"Columbus, O. ——— 18, ——.

"Mr. W. E. Curtis, Cincinnati.

"My Dear Sir: So far as I am concerned it is a "dead gut" with me I cannot raise any money and have none. I cannot even pay my little balance on my share in Madison Square and will have to lose it after paying $1,000 into it. I wrote Sexton he could have

it if he could pay my part. If not to give it to some one who would pay my share. That is the fix I am in at present. No one is more sorry than I, but I can't help it."

It will be noticed that it is without date, but plaintiff testified that he received it October 6th, which is the day he should have elected to sell and made tender of his deed. It therefore could not have influenced plaintiff in not making the tender, since he was in Cincinnati and Bracking, as shown by the letter, was in Columbus, Ohio, and at the same time defendant was in Kansas City, Missouri. It therefore appears that plaintiff is seeking to recover damages for non-compliance with a contract requiring prerequisite action on his part before an action could accrue, which he has not performed.

It will not aid him in any way to say that several weeks afterwards, as he states, he made a tender of a deed. It was doubly necessary that he make a tender of a deed on the day he was to exercise his option, for, as we have already shown, that option should have been exercised on the day named in the contract.

While the foregoing disposes of the case, yet we will add that defendant has pointed out another feature of it which is sufficient to deny plaintiff's right. He accompanied his notice of election to exercise the option by a demand, as a condition to making a deed, for more than was due him under the contract of repurchase and more than the amount claimed in his petition to be then due. Election in an option contract must correspond with the offer, meeting it in all points as made. [Potts v. Whitehead, 23 N. J. Eq. 516; Henry v. Black, 213 Pa. St. 620.] See also Batavia v. Railroad, 126 Mo. App. 13.

The judgment is reversed. All concur.

## ON MOTION FOR REHEARING.

PER CURIAM.—We are asked to grant a rehearing in this cause chiefly on the ground that our decision is in conflict with that of the Supreme Court when the case was before that tribunal (201 Mo. 217). As is stated in the foregoing opinion, the case was heard in the Supreme Court on an appeal from the action of the trial court in sustaining a demurrer to the evidence submitted for plaintiff. That court very properly held that that evidence was sufficient to make a case for a jury and remanded the cause for a full hearing at another trial. But the case made then is greatly different, in essential particulars, from that now presented.

It will be observed that the foregoing opinion is based principally on the ground that plaintiff's option to sell was not exercised on the day named in the contract, October 6, 1890, and that no tender of a deed was made by him on that day; and that a tender was not waived by defendant by a repudiation of the contract. It will be further observed that at the last trial no showing was made by plaintiff of an exercise of the option, or of a tender of a deed on that day. Yet, in these *vital* particulars the evidence before the Supreme Court was altogether different. The evidence, as then presented, disclosed that plaintiff did exercise his option and make his request on the day named in the contract. The importance and necessity of that being done at that time did not escape the attention of the Supreme Court. For it will be seen that in stating the evidence at the first trial, the court, at page 226 of the report, expressly say (italics ours) that: "Plaintiff had previous to that date *and on* that date notified them that he desired them to so repurchase and requested them to do so and they refused, . . ." Plaintiff's effort to carry out the contract on his part on that day is again stated at page 229 of the report.

Now on the last trial, from the result of which this appeal was taken, there was no such evidence. The present record not only fails to disclose evidence of that character, but the face of it shows that it is conceded that plaintiff did not take any action on that day, and the effect is to show that he did not perform on account of the acts of defendant, which are claimed to have made it unnecessary. The greater part of plaintiff's brief and argument is taken up in his effort to sustain that position; and we state in the opinion our reasons for concluding that he failed in that effort. We think our opinion is not in any way in conflict with that of the Supreme Court, but, on the contrary, is in harmony therewith.

We, of course, cannot enter into the controversy between the parties as to whether the evidence at the first and last trial was substantially the same. We have only the evidence at the last trial before us and we take the evidence at the first trial to be as the Supreme Court has stated it in the opinion; for, undoubtedly, it was upon that statement of the evidence the court formed its conclusion and pronounced its judgment. It would be unprecedented for this court to enter upon an examination as to whether the Supreme Court properly understood or stated the evidence at the first trial. We assume that it did.

We have gone over all the points suggested and think them not well taken. The motion is overruled.