RADDATZ, Respondent, vs. FLORENCE INVESTMENT COMPANY, Appellant.

*November 16, 1911—January 9, 1912.*

*Landlord and tenant: Option to purchase: Election by lessee: Default in payments: Condition subsequent: Forfeiture: Waiver: Fraud: Equity: Vendor and purchaser: Specific performance.*

1. A lease of a dwelling house for a term of four years, reserving a monthly rental in excess of a reasonable rent charge, provided that "in consideration of $100 and of said rents" the option was given the lessee to purchase the premises "on or before April 1, 1910," if he had fully complied with the terms and conditions of the lease to that time; and he could then pay the balance of the purchase money and receive a deed, or pay a smaller sum and receive a land contract. The lessee, who was ignorant, of low intelligence and small earning power, and unable to speak English, took possession of the premises, paid the $100, and made some permanent improvements in the belief that he was acquiring a home for himself and family and had the rights of a purchaser, all of which was known to the lessor. He did not pay the rent promptly, but his defaults in that respect were waived and the money received after due, being usually called for and collected on the premises. In 1908 the lessor accepted payment from the lessee for insurance on the premises up to August 3, 1911. In March, 1910, no demand was made for rent and the lessee was some months in arrears, but he had by great hardship laid up $200 to pay on the place and had arranged for a loan to cover the balance of the purchase money. On April 2d he paid, and the lessor accepted, the rentals which were in arrears and offered to pay the balance of the purchase price, asking for an abstract and deed, which were refused. In an action by the lessee for specific performance it is *held* that he had elected to purchase and that such election was known to the lessor prior to April 1, 1910, and that the parties had dealt in the matter upon the understanding that the right to purchase was based on the payment of the $100 and the payment of the rents.

2. Payment of the instalments of rent was a condition subsequent, under the contract, default in which forfeited the lessee's rights under the agreement; but acceptance of the overdue rents on April 2d waived such default.

3. If, in strictness, the failure to pay the balance of the purchase money on April 1st worked a forfeiture of the lessee's rights,

it is sufficient ground for equitable relief from the forfeiture that such default resulted from the lessee's ignorance of his rights, interests, and duties and the inequitable conduct of the lessor, through a long course of dealing, lulling him into a feeling of security that strict performance would not be insisted on.

4. A forfeiture incurred under a contract which secures the payment of money only, will generally be relieved against in equity on payment of the debt, interest, and costs.

5. The fact that the agreement stipulates that time shall be of the *essence* does not debar the application of this equitable principle, where the conduct of the party to whom the money was to be paid operated as a constructive fraud and aided to induce the forfeiture, and he will suffer no appreciable loss.

APPEAL from a judgment of the circuit court for Milwaukee county: CHESTER A. FOWLER, Judge.  *Affirmed.*

This is an action for specific performance under an instrument which the plaintiff contends is a contract for the sale of land and the defendant contends is a mere option to purchase within a specified time.   The instrument is as follows:

"This indenture, made this 26th day of March, 1906, by and between the *Florence Investment Co.* of the city and county of Milwaukee, in the state of Wisconsin, lessor, and *August Raddatz* of the same place, lessee.

"Witnesseth, that the said lessor does hereby lease, demise, and let unto the said lessee the following described premises situated in the county of Milwaukee and state of Wisconsin, to wit: the premises No. 1208 Hayes avenue, also known as lot 21 in block 2 in W. B. Neeves's subdivision, town of Greenfield.   And any and all buildings, sheds, or other improvements which may be made or put thereon, shall form, be, and remain a part of said premises.

"To hold for the term of forty-eight months from the first day of April, 1906, the said lessee yielding and paying therefor the monthly rent of fourteen (14) dollars in advance, to be paid on the first day of each and every month during said term, and payable at the office of Simon Heller, the first payment to be made on the first day of April, 1906.   The said lessee does covenant and agree to pay the said rent at the

times, at the place, and in the manner aforesaid promptly and without delay during the said term.

"It is expressly agreed and understood by and between the parties hereto that it shall not be necessary for the said lessor or its agent to demand said rent at any other place other than the place above specified for the payment of the same.

"It is mutually agreed and understood that said premises and every part thereof shall and must, during said term, be used only for the following business and purposes, and for no other business or purposes whatever, viz.: private dwelling for himself and his family.

"It is mutually agreed and understood that the said lessee shall make no alterations in said premises without the consent of said lessor first had and obtained in writing, under penalty of forfeiture of this lease and damages.

"It is mutually agreed and understood that the said lessee shall keep the said premises in as good repair as the same are in at the commencement of said term, reasonable use and wear thereof and damage by accidental fire or other accidents, not happening through the neglect of said lessee, his agents or servants, not excepted.

"It is mutually agreed and understood that the said lessee shall keep the outside of said premises in good repair and whole, and also the said lessee shall keep in good repair the inside thereof and make all necessary repairs inside of said premises.

"It is mutually agreed and understood that the said lessee shall keep the glass in the windows and doors in good repair and whole, damage by the elements not excepted.

"It is mutually agreed and understood that during said term the said lessee shall pay all water rates assessed and levied against said premises for water used therein at the time such rates become due and payable.

"It is mutually agreed and understood that the said lessee shall keep the water pipes, sewer pipes, gas pipes, drains, and plumbing in said premises in good repair.

"It is mutually agreed and understood that the said lessee shall keep the said premises in a clean and tenantable condition.

"It is mutually agreed and understood that the said lessee shall pay for the sprinkling of the streets in front of or

around said premises and all assessments and taxes levied therefor, by virtue of any charter provision of the town aforesaid, and also for all other taxes and assessments previous to January 15th, in every year, besides the fire insurance on said premises.

"It is mutually agreed and understood that the said lessee shall obey all ordinances of said town in regard to the cleaning of streets, alleys, and sidewalks in front of or adjoining said premises.

"It is mutually agreed and understood that the said lessee shall obey all lawful orders, rules, and regulations of the health officers, and all the health ordinances of said city or town.

"It is mutually agreed and understood that the said lessor may, at reasonable and proper hours, enter and view said premises and make such alterations and repairs as may be necessary in lessor's opinion.

"The said lessee does covenant and agree not to assign this lease nor any other right or privilege herein contained nor let or underlet said premises or any part thereof without the consent of said lessor in writing first had and obtained.

"In case said premises shall be partially damaged by fire the same shall be repaired as speedily as possible by and at the expense of said lessor, if the fire insurance money is sufficient for that purpose.

"In case the damage is so extensive as to render the premises untenantable, the rent shall not cease until the same are repaired, nor at any other time.

"If the premises be so damaged that the owner shall decide to rebuild, said term shall not cease, the premises shall be surrendered, and the rent paid the same as before.

"It is mutually agreed and understood that the said lessor may, within one month next preceding the expiration of said term, place the usual notice of 'To let' or 'For rent' (and giving the address of lessor or its agent), upon the walls, doors, or windows of said premises, and the said notice shall remain thereon without hindrance or molestation, and be safely kept by lessee.

"It is expressly agreed and understood that if the said lessee shall abandon or vacate said premises, or cease to regularly open, run, and use the premises for the purposes herein

stated before the expiration of said term, the said lessor shall be at liberty, at its option, to relet the same, and if any rent due or unpaid, apply the money derived from such reletting to the rent due or to become due on this lease, and the said lessee shall remain liable for any deficiency and agrees to pay the same.

"Provided always, and these presents are upon the express condition, that if the said lessee does or shall neglect or fail to perform and observe any or either of the covenants or conditions herein contained, which on his part are to be performed, the said lessor lawfully may, immediately, or at any time thereafter, and while such neglect or default continues, and without further notice or demand, enter into or upon said premises and repossess the same as of its former estate and expel the said lessee and those claiming under him and remove his and their effects (forcibly if necessary), and without being taken or deemed guilty in any manner of trespass, and upon entry as aforesaid this lease shall be determined, without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant; and such expulsion and removal, whether by the direct act of the lessor or its assigns or through the medium of legal proceedings for that purpose instituted, shall not affect the liability of said lessee or his representatives for the past-rent due or future rent to accrue under this lease, but the same shall continue as if such removal or expulsion had not taken place.

"It is agreed that no promise, agreement, inducement, or representation of any kind was made or entered into by lessor or its agent except as expressly herein stated. Lessor shall not be liable for any injury, loss, or damage to person or property on or on account of said premises or for any other claim, in any event and under any circumstances whatever, whether it be for labor, outlays, or otherwise; and no alteration of or addition to these presents shall be valid unless it be in writing and subscribed by the lessor.

"And the said lessee expressly agrees to quit and deliver up said premises to the said lessor peaceably and quietly, at the end of said term, by locking all windows and outside doors, and immediately thereafter delivering the keys thereof

to 'the president or secretary of said company personally at its office.

"In consideration of one hundred (100) dollars and of said rents, the option is hereby given to lessee to purchase said premises on or before April 1, 1910, if he has up to said day complied with all the terms and conditions of this lease, and then only, upon payment of twelve hundred fifteen 50-100 dollars, and in case lessee elects so to purchase, he to pay said $1,215.50 on said April 1, 1910, at the office of Simon Heller.

"It is agreed that time is the essence of this option, and that said option shall never be construed to give said *August Raddatz* any equity of redemption, or any right, title, interest, or claim of any kind whatever in said premises, in case he fails to make either or any of said payments punctually within the time or times herein provided for, and to comply with any and all of the terms and conditions of the within lease; and it is further provided that his failure to make any or either of such payments punctually as herein stated, or to comply with any and all of the terms and conditions of the within lease, shall be held to be a complete surrender of all rights and privileges conferred by this option. Any mortgage on said premises shall be deducted from the last balance due on said price.

"Lessee shall have the right on said April 1, 1910, if said option is still valid and binding, to pay only $65.50 cash instead of said $1,215.50, and receive a land contract on said premises to be executed in duplicate by the parties hereto, whereby he is to pay $10 each on the first day of every month for eleven months, beginning May 1, 1910, and one thousand and forty (1,040) dollars on April 1, 1911, with five per cent. interest p. a. payable quarterly from April 1, 1910, on all unpaid sums. Said lessee also to pay all taxes, assessments, and fire insurance, during the life of said land contract.

"And the covenants, stipulations, and agreements herein contained shall bind the parties mutually and their respective heirs, executors, administrators, representatives, and assigns.

"In witness whereof, the said company has caused these presents to be signed by its secretary, and said lessee has here-

unto set his hand and seal the day and year first above written.                    "FLORENCE INVESTMENT CO.,

"Simon Heller, Secretary.

"AUGUST RADDATZ.    [Seal.]

"Signed, sealed, and delivered

in presence of:

"_____ _____.

"_____ _____."

The court made the following findings of fact and stated the following conclusions of law:

### "Findings of Fact.

"1. That the defendant is and at all times mentioned herein has been a corporation duly existing under the laws of Wisconsin.

"2. That on March 26, 1906, the parties executed the certain instrument in writing in letters and figures as set out by copies attached to the complaint and made a part thereof.

"3. That shortly after the execution of said contract the plaintiff went into possession of the premises therein described, and has ever since occupied the same as a dwelling house, and that plaintiff entered into said contract with the purpose and intention of thereby and thereunder procuring the said premises in his own right as and for a home for himself and his family, as the defendant well knew.

"4. That after so taking possession of said premises the plaintiff paid the $100 mentioned in the option clause of said instrument.    That the plaintiff on December 18, 1908, paid to the defendant $7.20, the premium for insurance upon said premises up to August 3, 1911, which the defendant accepted.    That the plaintiff made monthly payments of $14 during the entire four years from April 1, 1906, to April 1, 1910.    That the plaintiff paid all taxes levied against said premises during all said term, and the insurance, prior as well as subsequent to said December 18, 1908.    That the plaintiff kept the dwelling house on said premises in repair during said term and made some improvements thereon of a permanent nature, consisting of two storm-house entrances and stairs leading from the basement, a room which was occupied as a kitchen, to the floor above used as a living room and bed rooms.

"5. That all said payments and improvements were made in and pursuant to a *bona fide* belief held by the plaintiff that he had rights as a purchaser under said instrument, and that the defendant knew of the said belief and understanding of the plaintiff.

"6. That the plaintiff's monthly payments were not made upon the precise day upon which they were due, but the plaintiff was uniformly in default thereof, which defaults the defendant uniformly waived. That no 'For rent' sign was posted up on said premises during the thirty days prior to April 1, 1910. That the defendant did not call at the premises to collect rent during the last month of the term of said contract, though it had customarily done so theretofore.

"7. That prior to April 1, 1910, the plaintiff had arranged for a loan of a thousand dollars upon said premises and had $215.50 in addition to the monthly payments then due and payable saved up, all for the purpose of making full payment under said contract and procuring a deed of the said premises. That the plaintiff was able and prepared on said April 1st to pay all $14 monthly payments upon said premises and the $65 additional requisite to procuring a 'land contract' on said premises, and he was then able to pay the $1,215.50 required by said contract for a deed of conveyance provided the defendant would accommodate him with an abstract of title to said premises, which the defendant had in its possession, to submit to the person with whom negotiations for said loan had been made. And the plaintiff intended and expected on said day and long prior thereto to make the payments required to be made on said day to secure the said premises or his rights as a purchaser thereof as the defendant well knew, but did not appreciate or understand that said payments had to be made precisely and literally upon said day or his rights under said contract would cease and be forfeited by the strict letter of said contract.

"8. That the plaintiff is an ignorant man, of low intelligence, and is unable to speak the English language, a day laborer of small earning power and without means other than his labor, and made said payments at great cost and hardship to himself and his family, and that $12 per month is excessive as a mere rent charge for said premises.

"9. That on April 2, 1910, the plaintiff through his wife

paid to the defendant $43, being all sums due as the monthly payments under said contract, which sums were received by the defendant, and asked for a deed of said premises and an abstract of title to exhibit to secure the loan above mentioned, and then demanded a deed of conveyance; but that the defendant's agent, on learning that the plaintiff's wife did not have with her the entire purchase price of said land, refused said deed and abstract, and refused to convey said premises, and forcibly ejected the plaintiff's wife from the defendant's office.

"10. That subsequent to said April 2d the defendant refused to convey the said premises to the plaintiff except on condition that the plaintiff pay some $80 in addition to the $1,215.50 required by said contract to be paid on April 1st for a deed; that on April 9, 1910, the plaintiff tendered the defendant $1,216.50 in lawful money of the United States, and demanded a conveyance of said premises, but the defendant refused to receive said money and refused to deliver a conveyance of said premises; that the said tender was about ninety cents short of the amount of $1,215.50 and interest thereon from April 1st to said date of tender, but was not refused for that reason, and the tender would have been refused had said shortage been included, and that the shortage was due to an error in computation of interest. That said $1,216.50 was paid by the plaintiff into court on the commencement of this action and is now in custody of the clerk thereof for the benefit of the defendant.

"11. That the defendant was in no way injured or prejudiced by the failure of the plaintiff to pay said $1,215.50 on April 1st instead of April 2d, and the defendant might have had the same on said April 2d had he not refused to accept it at that time, nor was he injured or prejudiced by not having legal tender thereof made prior to said April 9th. And the said tender was made by the plaintiff within a reasonable time after the defendant's said refusal to convey said premises under the circumstances in evidence.

## "*Conclusions of Law.*

"1. That the said instrument under the facts found constituted and was in force on April 1, 1910, as a contract of sale of lands as distinguished from a mere option to purchase.

"2. That the plaintiff's failure to produce and tender the $1,215.50 on April 1st instead of April 2d did not, under the facts found, forfeit the rights of the plaintiff under said contract, and that the said transaction of April 2d was, under said facts, a substantial and sufficient tender of performance by the plaintiff prerequisite to a right to a conveyance from the defendant, within the actual and true intent of the said instrument and the parties thereto.

"3. That to deny the plaintiff the remedy of specific performance under the facts found would permit the transactions to work irreparable injury to the plaintiff and to operate as a fraud by the defendant against the plaintiff.

"4. That the plaintiff is in equity and good conscience entitled to a decree of specific performance against the defendant with costs of action."

The court ordered judgment decreeing specific performance; directing conveyance from the defendant to the plaintiff by warranty deed of the premises involved; that the money deposited by the plaintiff with the clerk of the court be paid to the defendant as the consideration for the conveyance; and that the plaintiff recover his costs.

This is an appeal from the judgment so ordered.

For the appellant there was a brief by *Lenicheck, Robinson, Fairchild & Boesel,* and oral argument by *F. J. Lenicheck* and *E. T. Fairchild.*

For the respondent there was a brief by *Rubin & Lehr,* attorneys, and *W. B. Rubin,* of counsel, and oral argument by *W. B. Rubin.*

SIEBECKER, J.   The contractual part of the lease embracing the agreement, whereby the plaintiff was given the privilege of purchasing the premises, has features disclosing the intent of the parties on entering this relation.   It appears therefrom that the option was based on a consideration additional to the $100 cash payment therein stipulated.   It is expressly stated that, "in consideration of one hundred (100) dollars and of said rents," the option is given to the

lessee to purchase the premises on or before April 1, 1910, if
the terms of the lease have then been performed, upon pay-
ment of the sum stipulated.    It is manifest from these terms
of the agreement that the parties contemplated that if the
plaintiff complied with the conditions of the lease and paid
the rent and the $100, as agreed, he was to have the right to
acquire the property by purchase, upon payment of $1,250.50
on April 1, 1910, or he was to receive a land contract provid-
ing for the payment of the unpaid purchase money and for
the conveyance of the premises upon payment of the sum
of $65.50.    Under these terms the plaintiff had the right to
elect to purchase, upon payment of the $100 and the rents,
before April 1, 1910, if the other provisions of the lease had
been complied with.    The evidence shows and the court
found, in substance, that the plaintiff was a common laborer,
ignorant of the nature of such a business transaction and his
rights, interests, and duties arising therefrom; that he was
dependent on others for information and advice for the pro-
tection of his rights and the discharge of his obligation; and
that the defendant's officers, who dealt with the plaintiff, well
knew and understood this.    It also appears that these officers,
by their course of dealing with the plaintiff, apprised him of
his obligations under the agreement as they arose, went to his
residence to collect the rents, and accepted them when past
due, and thereby led plaintiff into the belief that strict per-
formance under the agreement would not be enforced as to
the time of payment.    The court found, in conformity with
the evidence, that the plaintiff made improvements, paid the
monthly instalments of rent,—and that such amount was in
excess of the rental value of the premises,—and also paid the
$100 in the *bona fide* belief that he thereby acquired the
rights of purchaser of the premises, and that the defendant's
officers knew that the plaintiff entertained this belief and
understanding.    The fact that the defendant's officers ac-
cepted payment from the plaintiff in December, 1908, for in-

surance on the premises up to August 3, 1911, is corrobora-
tive of the fact that they and the plaintiff dealt in the matter
upon the understanding that the plaintiff had determined and
elected to purchase the premises pursuant to the contract.
Under these facts and circumstances it must be held that the
defendant's authorized officers were informed, when the
plaintiff paid the $100, that he elected to purchase as pro-
vided in the lease.   It is clear that the parties treated this
stipulation in the contract as plaintiff understood it, namely,
that the plaintiff's right to purchase was based on the pay-
ment of the $100 and the payment of the rents.   In the
light of the fact that the monthly rent payment was an
amount in excess of a reasonable rent charge for the use of
the premises, it is obvious that the parties contemplated such
rent to be in part a payment of the consideration for the pur-
chase of the property.   This circumstance throws light on
their conduct and in its equitable effects operates to estab-
lish in plaintiff the right to a conveyance of the property,
upon compliance with the conditions of the payment, on
April 1, 1910.   Under the facts and circumstances of the case
and the existing relations of the parties, it must be held that
the plaintiff's election to purchase was made known to the
defendant prior to April 1, 1910, and that the payment of the
rent accruing after such election and the amount due on
April 1, 1910, were conditions subsequent under the contract
entitling him to a transfer of the premises.   The perform-
ance of these conditions was obligatory on the plaintiff and a
default therein forfeited his rights under the agreement.

It appears that the plaintiff defaulted in the payment of
the three last payments of rent immediately prior to April 1,
1910, and that he did not pay the balance of the purchase
money stipulated to be paid on this day, but that he offered
to pay it on April 2, 1910.   Defendant's officers, however,
accepted payment of these three instalments of rent on
April 2, 1910.   Such acceptance was a waiver of the default

as to such rent and left the contract in force, unless it be that nonpayment of the amount of the purchase price as was agreed to be paid April 1, 1910, forfeited the plaintiff's rights thereunder. If it be assumed that the agreement was then forfeited, the question arises: Is plaintiff entitled to relief from the enforcement of such forfeiture under the established facts and circumstances showing the foregoing favorable equitable considerations to the protection of plaintiff's rights, and the oppressive and unconscionable character of the defendant's attitude in seeking to enforce the forfeiture under the circumstances? In equitable contemplation it is sufficient to establish grounds for relief from such a forfeiture if the plaintiff's misapprehension resulted through ignorance of his rights, interests, and duties, and if the inequitable conduct of the defendant, through a long course of dealing, acquiesced in by the defendant's officers, aided in lulling him into a feeling of security that strict performance would not be insisted on and that his rights were secure. Under the facts of the case we consider that the plaintiff is entitled to equitable relief against the forfeiture. The grounds upon which such relief is granted are stated as follows:

"It is well settled that where the agreement secured is simply one for the payment of money, a forfeiture either of land, chattels, securities, or money, incurred by its nonperformance, will be set aside on behalf of the defaulting party, or relieved against in any other manner made necessary by the circumstances of the case, on payment of the debt, interest, and costs, if any have accrued, unless by his inequitable conduct he has debarred himself from the remedial right, or unless the remedy is prohibited, under the special circumstances of the case, by some other controlling doctrine of equity." 1 Pomeroy, Eq. Jur. § 450 and cases cited; *Gates v. Parmly,* 93 Wis. 294, 66 N. W. 253, 67 N. W. 739.

The fact that the agreement expressly stipulates that time shall be of the essence in the payment of the rent and the consideration of the purchase money does not debar the application of this equitable principle, in the light of the established

facts that the conduct of the defendant's officers operated as a constructive fraud on the plaintiff and that such conduct aided to induce the forfeiture. Under such circumstances the plaintiff is entitled to relief, where otherwise it might be denied, upon the ground that the forfeiture was incurred through the conduct of the defendant, which operated in an oppressive and unconscionable way on the plaintiff, who was himself free from wilful violation of the agreement or of inequitable conduct. It is obvious that the defendant incurred no loss through the default, aside from the use for one day of the money due. The facts suggest nothing to indicate but that, if defendant be awarded the money deposited in court, it will be compensated for all its claims and expenses. Upon the record the plaintiff is entitled to be relieved from the default and to have judgment for the specific performance of the contract. It is considered that the judgment awarded accomplished this result.

*By the Court.*—Judgment affirmed.

BARNES, J., dissents.