Julius E. KERN, Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation, Defendant.

No. 10898(2).

United States District Court E. D. Missouri, E. D.

Sept. 8, 1960.

Charles H. Shaffar, of Vatterott & Shaffar, St. Ann, Mo., for plaintiff.

William W. Sleater, Jr., of Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., for defendant.

HARPER, Chief Judge.

The action before the court is based on two insurance policies issued by defendant to plaintiff. Policy No. 11,335,891 is a modified whole life policy with face value of $10,000. Policy No. 31,000,481 is a five-year term policy with conversion privilege dated June 4, 1951, with face value of $49,000. Both policies provide for waiver of premiums in the event of total and permanent disability.

During 1952 plaintiff became disabled and defendant waived the premiums in accordance with the terms of the policies. After making an investigation defendant determined that plaintiff was gainfully employed and was no longer totally and permanently disabled. On February 16, 1956, defendant wrote plaintiff informing him that the premiums falling due on the whole life policy (No. 11,335,891) would not be waived, and that the term policy (No. 31,000,481) would expire June 4, 1956. Plaintiff paid the premiums due December 2, 1956, 1957, 1958 and 1959 on the life policy under protest. In a letter dated April 23, 1956, defendant notified plaintiff that the conversion privilege in the term policy was not automatic, but that conversion would be made only upon request and upon payment of the first premium for the new policy before the expiration date

of the term policy. No request for conversion was made or premium paid.

Suit was originally filed September 12, 1956, on both of these policies and another. The suit was dismissed as to the term policy and another policy not here involved on motion for summary judgment. Final judgment in favor of the plaintiff was entered June 17, 1959, as to the whole life policy. Subsequently, plaintiff moved to set aside the order sustaining the motion for summary judgment, which motion was granted, the court's memorandum being filed December 3, 1959. By stipulation of the parties, the judgment of June 17, 1959, was set aside and the matter is before the court on plaintiff's second amended complaint, in two counts, the first based on the whole life policy and the second on the term policy.

As plaintiff elected to keep Policy No. 11,335,891 in force by paying the premiums under protest, the sole question as to Count I of plaintiff's second amended complaint is whether plaintiff was totally and permanently disabled within the terms of the policy, that is, "sufficiently to render insured incapable of performing any work or engaging in any occupation for remuneration or profit", so as to entitle him to waiver of premiums for the period in question.

The testimony, which was resubmitted by stipulation, and the authorities cited in this court's memorandum opinion filed May 20, 1959, lead to the finding that plaintiff was totally and permanently disabled February 16, 1956, and through the premium periods in question within the meaning of the policy provisions. The extent of plaintiff's damages under Count I were stipulated to be premiums due December 2, 1956, 1957, 1958, and 1959, under stipulation dated April 22, 1960, which incorporates pretrial stipulation of April 28, 1959.

Policy No. 31,000,481, the term policy, defines disability in substantially the same language as the whole life policy. The authorities cited with reference to Policy No. 11,335,891 are also controlling in construing the disability clause of the term policy. Therefore, the memorandum of May 20, 1959, is incorporated herein regarding the question of disability under both policies.

The action on the term policy, however, presents an additional question. The term policy insured plaintiff for a five-year period ending June 4, 1956, subject to a conversion privilege, which, according to the terms of the policy itself, required written application and surrender of the term policy while it continued in force, and payment of premium due on the new policy within 31 days after the date of the written request for conversion. The parties agree that the exercise of the privilege without proof of insurability was limited to an election of a modified whole life policy with change of premium rate at end of three years or a life policy paid up at age 85. Plaintiff, in his petition, prays for the latter.

Either policy, if the waiver privilege had been exercised, would have included provision for waiver of premiums. Defendant's letter of February 16, 1956, denied disability and refused further waiver of premiums. Since the premiums on the term policy were fully waived to the date of expiration of the policy, June 4, 1956, the refusal would affect only a rewritten policy in the event the conversion privilege was exercised. Defendant's form letter of April 23, 1956, re-worded the conditions of the conversion privilege to the extent that it called for a written request and payment of the first premium before the expiration of the term policy. As stated before, plaintiff neither made application nor tendered the premium.

It does not appear from the evidence that defendant's denial of disability (while wrongful as a matter of law) was made in bad faith, and hence, that the requirement of payment of premium in event of conversion was for the purpose of defeating all liability. The investigation made by defendant's representative, upon which its action was

based disclosed a situation which supported a literal interpretation of the policy provisions for termination of the disability benefits. The notices of February 16, 1956, and April 23, 1956, were made in good faith in accordance with defendant's interpretation.

The action is on an option of which time is of the essence, which option was not exercised and which was terminated by its own terms three months before suit was filed. Plaintiff's position is founded upon a prior breach of the term policy, which affects the option by imposing a condition (payment of the first premium on the new policy) not imposable under a correct application of the Missouri law to the disability provisions of the contract. The question, then, is whether the imposition of that condition is such an act as will excuse a failure to make timely request in exercise of the option so as to allow election some three months after expiration of the contract through equitable powers of the court.

■ While equity may compel issuance of an insurance policy, there must exist a valid and completed contract to insure. This is no more than a specific statement of the rule that a valid and binding contract is essential because specific performance cannot be decreed where there is no duty to perform. American Jurisprudence, Specific Performance, Sec. 15.

■ The contract, if any, in the instant case is the option to convert. While it is contained in the term policy, and the premiums paid under the term policy provide the consideration for the option, the option is, nevertheless, a distinct contract from the term insurance contract. Rockhill Tennis Club v. Volker, 331 Mo. 947, 56 S.W.2d 9. Acceptance, or exercise, of the option is a condition precedent to a decree of specific performance. American Jurisprudence, Specific Performance, Sec. 119; James on Option Contracts, Sec. 1204.

Cases which do not so state, nevertheless, proceed on the finding that acceptance has been manifested. Starr v. Crenshaw, 279 Mo. 344, 213 S.W. 811; Rosenbloom v. New York Life Ins. Co., 8 Cir., 163 F.2d 1. The rule is further stated that the acceptance or election must be made in the time and manner prescribed. Suhre v. Busch, 343 Mo. 170, 120 S.W.2d 47; Wimer v. Wagner, 323 Mo. 1156, 20 S.W.2d 650, 79 A.L.R. 1231.

The cases involving options, and more particularly the exercise of an option can be categorized into three groups: (1) Those options which provide for exercise of the option by giving notice within a specified or reasonable time; (2) those which provide for exercise by performance of the contract which is the subject of the option such as payment of the purchase price in an option to purchase; and (3) those which require as the exercise of the option both notice and an act, which may also be performance of the optional contract. The conversion privilege in the policy in this case required written request before expiration of the term policy, and the new converted contract would not be binding until payment of the first premium within 31 days after the written request. Some question might arise as to whether one or both acts were, by the terms of the policy, necessary for exercise of the option as opposed to those acts which were intended not as the election but only as performance. Both parties, in their briefs, apparently consider the conditions set out in the letter of April 23rd as the acts necessary for an exercise of the option—both a written request and payment of the first premium before expiration of the term policy. Assuming this view, since it is most favorable to the plaintiff for purposes of this action, the question arises: Were either or both conditions excused?

The payment of the premium was excused by the terms of the disability provisions of the policy as construed by the law of Missouri. It is plaintiff's position that a written request was also excused because, without payment of the premium, it would meet with certain refusal and the law does not require a futile act.

■ An examination of the cases indicate that conduct which will excuse the exercise of an option is strictly limited. Performance of a contract or tender of performance has been excused when it has been previously refused (White v. Metropolitan Life Ins. Co., Mo.App., 218 S.W.2d 795), or where the other party repudiates the agreement or so breaches the contract as to amount to a repudiation (Landau v. St. Louis Public Service Co., Mo., 273 S.W.2d 255). Not every breach will excuse tender of performance. The breach must be of a fundamental and vital character and it must appear that the injured party treated it as void and insists upon the contract. Lavin v. Grand Lodge, 112 Mo.App. 1, 86 S.W. 600; Wimer v. Wagner, supra.

Likewise, in cases concerning options, where the exercise is also the performance, the timely performance has been excused in particular situations.

In Cooper v. Mayer, Mo., 312 S.W.2d 127, loc. cit. 130, the court cited as a unanimous rule of Missouri:

"* * * where failure of a party to perform a condition (exercise of option by payment of $1,000 within a specified time) is induced by a manifestation to him by the other party that he will not substantially perform his own promise, performance of such condition is waived and, therefore, excused."

The quoted rule is preceded, however, with the appellate court's findings that defendants had due notice of plaintiff's intention to exercise the option, and defendants, with such knowledge, unconditionally repudiated the agreement and evaded timely tender of the purchase price.

The rule upon which plaintiff relies is set out in Curtis v. Sexton, 142 Mo. App. 179, 125 S.W. 806, loc. cit. 808, where exercise required notice and tender of a deed:

"The party desiring and intending to go into court to enforce a contract has the burden on himself to prepare for such move. He must put himself in position to be able to show that he has done or offered to do all on his part which would cast upon the other party the duty of doing what he is undertaking to have the court force him to do.

"But it is said that, though the duty to make an election and a tender is as we have stated it, yet that defendant repudiated the contract to purchase and so informed plaintiff. It is indisputable law that, though in a case where a tender is required of the party initiating proceedings in court to enforce a contract, if the party to whom the tender should be made has shown in some effective way that he will not accept it, then, it having thus become a useless act, it need not be performed."

The court did not decree specific performance because there was no repudiation. On rehearing upon the objection that the court's opinion conflicted with the Supreme Court's opinion in a successful action for damages arising out of the same situation, the court stated there was no conflict because the records in each court different in a material respect. In the Supreme Court there was evidence that timely notice (not tender) had been given, whereas the record before the Court of Appeals had shown that neither notice nor tender of the deed was made in time.

A number of cases have excused timely performance where performance was an act, either alone or in addition to notice, required to exercise an option, and have excused other conditions precedent to exercise. Starr v. Crenshaw, supra; Cook v. Jones, 96 Ky. 283, 28 S.W. 960; Brewer v. Sowers, 118 Md. 681, 86 A. 228; Gaylord v. McCoy, 161 N.C. 685, 77 S.E. 959; Unatim 7-Up Co. v. Solomon, 350 Pa. 632, 39 A.2d 835; Raddatz v. Florence, 147 Wis. 636, 133 N.W. 1100. In each case some manifestation of acceptance was made or attempted, but the other conditions, formal request, tender of a deed, payment, etc., was excused

because the defendant evaded tender, absolutely repudiated the contract, or purposely misled the optionee as to his rights.

On the other hand, where some form of notice of intent to exercise the option is not given, and the conduct of the defendant, though constituting a breach of the contract (for example, failure to tender a deed, statement of inability to perform), was not a repudiation, the timely election or tender was not excused. Suhre v. Busche, supra; Curtis v. Sexton, supra; Merritt v. Joyce, 117 Minn. 235, 135 N.W. 820; and Mason v. Payne, 47 Mo. 517.

The last mentioned case above is particularly explicit. In that case the election by notice was not excused even though court action was required to convey good title to the land which was the subject of an option to purchase. The court stated, loc. cit. 520:

> "The notice (election) was not a demand for a deed, but a stipulated act that would so obligate the defendants that the court, as the guardian of the rights of infants, would order a conveyance—a stipulated act that would convert a proposition into a contract."

Special mention is made of the Rosenbloom case, supra, as being consistent with the position now stated for the reason that that case was cited in the memoradum filed December 3, 1959, setting aside the summary judgment. In Rosenbloom v. N. Y. Life Ins. Co., supra, conditions precedent to conversion were excused as being futile acts where the insurer refused to issue a converted policy without inclusion of a "war and aviation clause", which clause the court found could not be added under the provisions of the conversion privilege. The actual holding of the court was that the insured had not acquiesced in the determination of the insurer or abandoned his position. The facts which were the basis of this holding were that the insured had given notice of his desire to convert and had vigorously opposed the position of the insurer. In effect, the court found the insurer's conduct excused the *formal* application and collateral conditions for conversion.

James on Option Contracts, Sec. 868, raises the question with which we are concerned: "Is it possible that the conduct of the optionor may be such as to dispense with election?"

The authorities cited in this memorandum, some of which are cited by James and some being of more recent date, are summarized by his conclusion:

> "There may be conduct on the part of the optionor which will waive a timely exercise of the option right and notice thereof, or an insufficient or a conditional election, or a formal notice, but it is not believed that conduct on the part of the optionor, short of estoppel, can entirely dispense with an election of some kind brought to the knowledge of the optionor."

■ Defendant did not repudiate the contract. In fact, the notice of conditions necessary for exercise of the conversion affirm the privilege. Denial of disability amounted to a simple breach of contract. Trainor v. Mutual Life Ins. Co. of N. Y., 7 Cir., 131 F.2d 895; New York Life Ins. Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971. There was no inequitable conduct on the part of defendant amounting to estoppel.

Equity is powerless to convert the option into a contract to insure, unless by some act of the option holder the option is vitalized into a contract.

The court will find for the plaintiff on Policy No. 11,335,891 and grant to the plaintiff money damages equal to the premiums paid which were due December 2, 1956, 1957, 1958 and 1959, plus interest.

Judgment will be for the defendant on Policy No. 31,000,481.

Attorneys for the defendant will prepare the findings of fact, conclusions of law and judgment, submit same to the attorney for plaintiff for approval as to form, and to the court for entry.