CLIFTON R. TERRY and ELLEN TERRY, His Wife, Appellants, v. STANISLAUS MICHALAK and ANTONINA MICHALAK, His Wife.— 3 S. W. (2d) 701.

Division One, March 3, 1928.

*Heideman & Heideman* for appellants.

*Ivon Lodge* for respondents.

SEDDON, C.—Action in equity for the specific performance of an alleged written contract for the sale and conveyance of real property, and for the recovery of damages alleged to have been sustained by plaintiffs because of the withholding of possession of said real property by defendants, together with monthly rents and profits alleged to have accrued to plaintiffs by reason of the occupancy and use of said property by defendants. Plaintiffs' petition is drawn in two counts. The substantive allegations of the first count of the petition, and the prayer thereof, are as follows:

"Plaintiffs further state that defendants on and prior to the 9th day of May, 1924, were, and now are, the owners in fee and seized and possessed of the following described lot, tract or parcel of land, lying and being in the city of St. Louis and State of Missouri, to-

wit: The western thirty-five feet of lot number fourteen of Elmwood Park and in block number 5232 of the city of St. Louis, fronting thirty-five feet on the north line of Davison Avenue by a depth northwardly of one hundred and twenty-one feet and six inches to an alley, together with improvements thereon known as number 5009 Davison Avenue.

"That defendants, on said 9th day of May, 1924, offered to sell said land and improvements to plaintiffs, and then and there represented to plaintiffs that said lot or tract of land had a front of forty-five feet on the west side of said Davison Avenue and a depth of one hundred and fifty feet, and plaintiffs relying upon, and being induced by, said representations of defendants regarding said real estate, plaintiffs and defendants, on said date, entered into a contract in writing, which was signed by defendants and by plaintiffs, whereby defendants agreed to sell to plaintiffs said real estate for the total price and sum of sixteen hundred dollars, eight hundred dollars of which said sum should be paid by plaintiffs to defendants in cash and the balance of eight hundred dollars in notes, secured by deed of trust on said real estate, with interest on deferred payments at the rate of six per cent per annum, and that said sale should be closed on or before May 25, 1924; that title to said property should be perfect, and be conveyed to plaintiffs by warranty deed, free from liens and incumbrances, except the taxes for the year 1924, and thereafter, which plaintiffs assumed and agreed to pay; that said sale should be subject to restrictions recorded, and that the rents, interest, water license, taxes and insurance should be adjusted to date of transfer of said property; whereupon plaintiffs paid to defendants the sum of fifty dollars as earnest money and part purchase price for said real estate, the receipt of which defendants in and by said contract acknowledged; a copy of which said contract is hereto attached and marked 'Exhibit A.'

"Plaintiffs further state that in truth and fact the lot or tract of land known as number 5009 Davison Avenue, sold to plaintiffs by defendants under the contract aforesaid, has an actual front of only thirty-five feet, instead of forty-five feet, and an actual depth of only one hundred and twenty-one feet and six inches instead of one hundred and fifty feet, and that said Davison Avenue runs east and west and said lot and improvements actually front on the north side of said Davison Avenue, in block 5232 of the city of St. Louis, instead of on the west side of said street, as set out in said contract.

"Plaintiffs state that said lot or tract of land having dimensions of thirty-five feet front and 121½ feet deep, and an area of 4252½ square feet, is of far less value to plaintiffs than if its dimension were actually 45 feet front and 150 feet deep, as set out in said contract, with an area of 6750 square feet, and plaintiffs are entitled in equity

and good conscience to a reduction or abatement of so much of the said purchase price as will compensate plaintiffs for said reduced value of said lot or tract of land, and plaintiffs have demanded from defendants a good and sufficient warranty deed for said lot or tract of land with its dimensions reduced to 35 feet front and 121½ feet deep, and have offered to pay defendants the reduced value thereof, to be fixed mutually between plaintiffs and defendants, and plaintiffs have always been able, ready and willing, and are still able, ready and willing, to perform their part of said contract, and to pay defendants such reduced value of said lot or tract of land with improvements thereon for an indefeasible title thereto free from liens and incumbrances, except the taxes for the year 1924 and thereafter, and to do and perform fully any and all their undertakings, promises and agreements in said contract contained; and plaintiffs say that on or about the 12th day of May, 1924, they duly offered to pay to defendants the balance of said purchase money to be paid in cash and execute said notes and deed of trust, and duly and fully perform all and every one of the conditions of said contract on their part to be performed, and requested such conveyance from defendants, but defendants refused and still refuse to receive said reduced value of said real estate and to execute and deliver to plaintiffs their warranty deed, or to perform any part of said contract on their part undertaken.

"Wherefore, plaintiffs pray the court to ascertain and determine the reasonable value of said lot or tract of land with improvements thereon, hereinbefore described, as the western thirty-five feet of lot number fourteen of Elmwood Park and in block number 5232 of the city of St. Louis, fronting thirty-five feet on the north line of Davison Avenue by a depth northwardly of one hundred and twenty-one feet and six inches to an alley, and that defendants be ordered and directed to convey to plaintiffs, by good and proper warranty deed, subject to the conditions and restrictions of said contract, said lot or tract of land with improvements thereon, and that plaintiffs pay to defendants the price and sum so ascertained and determined by the court to be the reasonable value thereof; and for such other and further relief as to the court shall seem meet and proper."

The allegations and the prayer of the second count of the petition are as follows:

"And for another and further cause of action plaintiffs adopt all the allegations set out in the first count of this petition with the same force and effect as if set out herein *in haec verba,* and state that defendants on said 12th day of May, 1924, and ever since said date, have been, and now are, in possession of the real estate set out in the first count of this petition, and that plaintiffs from and after said date became and now are entitled to the possession thereof, and plain-

tiffs demanded the possession of said real estate from defendants on said 12th day of May, 1924, but defendants refused and still refuse to surrender the same to plaintiffs herein, and are withholding the possession thereof from plaintiffs to their damage in the sum of five hundred dollars, and that the monthly value of the rents and profits of said premises is twenty dollars.

"Wherefore, plaintiffs pray judgment against defendants for said sum of five hundred dollars, and twenty dollars per month for the monthly rents and profits from the rendition of the judgment herein until the possession of said premises is delivered to plaintiffs."

Defendants filed written demurrer to the petition, and to each count thereof, stating as ground of the demurrer that the petition, and each count thereof, fails to state facts sufficient to constitute a cause of action against defendants.

The circuit court sustained the demurrer to the petition, and plaintiffs declining to plead further, judgment was entered that plaintiffs take nothing by their suit and that defendants be discharged without day and recover of plaintiffs the costs of suit. Plaintiffs were allowed an appeal to this court from the judgment so entered.

I. Defendants (respondents here) insist that the written contract pleaded in the first count of the petition is so indefinite, uncertain and incomplete in its terms, and especially with respect to the number, amounts and times of payment of the notes which are to evidence the deferred payments of the consideration, or purchase price of the land, that a chancellor is unable therefrom to frame a decree for specific performance of such contract. The written contract, as pleaded by plaintiffs in their petition, provides that eight hundred dollars, or one-half of the total consideration to be paid by plaintiffs for the real property which is the subject of the contract, shall be evidenced by "notes, secured by deed of trust on said real estate, with interest on deferred payments at the rate of six per cent per annum." It is readily apparent that the alleged contract is incomplete and indefinite respecting the number of the notes which shall evidence the deferred payments of the consideration; that is to say, the contract does not provide whether there shall be two notes, three notes, five notes, ten notes, or twenty notes. It is likewise apparent that the alleged contract is just as incomplete and indefinite respecting the dates of maturity, or times of payment, of the notes which shall evidence such deferred payments. Can a chancellor say that the notes are to mature in their order in successive months following the date of their execution, or are such notes to mature in their order in as many successive years following the date of their execution? And is each of said notes to be drawn in the same amount, or shall the notes differ in their respective amounts? And,

furthermore, what shall be the terms and conditions of the deed of trust by which payment of the said notes shall be secured? It is a general and universally established rule that a court of equity will not make a contract for the parties, and, where the parties have failed to make and enter into a contract which is complete in all its essential terms, or, where the contract made by the parties is indefinite and uncertain in any of its essential terms, a court of equity will not decree specific performance of such contract.

In 36 Cyc. 587-590, respecting the subject of specific performance of contracts, it is said: "The contract must be complete in all its parts; that is to say, it must contain all the material terms, and none of these terms must be left to be settled by future negotiation. It must also be certain; that is to say, each of the material terms must be expressed with sufficient clearness and definiteness to enable the court to ascertain the intent of the parties and to frame its decree in accordance with such intent. The court cannot make a contract for the parties, *ex aequo et bono.* . . . An action at law for breach of contract can often be maintained, although some of the terms of the contract are not established with exactness. It is otherwise where specific performance is required. The court, in order that it may frame a decree in accordance with the intent of the parties, must be clearly apprised of that intent in all essential respects. A greater degree of certainty is required than in actions at law for damages."

The same textwriter says, in 36 Cyc. 597: "Where payment by the terms of the contract is to be deferred, especially where such deferred payment is to be secured by mortgage, but the time of payment is not specified, the uncertainty is fatal."

As is said by Mr. Pomeroy, in his standard treatise on Specific Performance of Contracts (3 Ed.) section 145: "It is an elementary doctrine of the courts of equity that they will not specifically enforce any contract unless it be complete and certain." And the learned author says, in Section 159 of the same text: "An uncertain contract, therefore, may perhaps embrace, in a partial manner, all the material terms, but on account of the inexact, indefinite, or obscure language in which one or more of them is stated, it fails to express the intent of the parties with sufficient clearness to enable the court of equity to enforce its provisions. The specific performance of an agreement, thus uncertain, will not be decreed. . . . A greater amount or degree of certainty is required in the terms of an agreement which is to be specifically executed in equity than is necessary in a contract which is to be the basis of an action at law for damages. An action at law is founded upon the mere non-performance by the defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness. The suit in equity is wholly an affirmative proceeding. The mere fact of non-perform-

ance is not enough; its object is to procure a performance by the defendant, and this demands a clear, definite, and precise understanding of all the terms; they must be exactly ascertained before their performance can be enforced.''

In Mastin v. Halley, 61 Mo. 196, 200, the consideration for the sale of real estate, as expressed in a written contract, was that the purchaser should erect upon the land ''a certain building,'' without any further description. Held, that such contract cannot be specifically enforced in equity because of the indefiniteness of the consideration. Said Judge SHERWOOD, speaking for this court in that case: '' 'A certain building' is to be erected upon the lot, but the dimensions, quality and material thereof are altogether conjectural. . . . Whenever the absence of the essential element is ascertained to exist on the part of one party, and for that reason is incapable of being enforced against him, that party is equally incapable of enforcing the contract against the other, although no difficulty should attend its execution in the latter way. And this is plainly the state of the case here. . . . The doctrine here asserted is as thoroughly settled as any in equity jurisprudence. [Fry, Spec. Perf., 133, and cases cited.]''

In the case of Lackawanna Coal & Iron Co. v. Long, 231 Mo. 605, plaintiff sought a decree in equity for the specific performance of a real estate contract which provided for a total consideration of $58,000, of which consideration $18,000 was to be paid by the purchaser in cash, and the remainder thereof was payable on or before five years. In denying the equitable relief sought because of the incompleteness and indefiniteness of the contract pleaded in the petition, LAMM, P. J., speaking for this division of this court, said (l. c. 611, 612): ''It is not necessary to cite authority to sustain the fundamental proposition that, in specific performance, a chancellor will not make contracts for parties. Parties must make their own, and the chancellor, moving in the orbit of a sound judicial discretion, performs them as made—not otherwise. From that premise is deduced the doctrine that contracts, in order to be specifically performed, must not be vague and uncertain in terms and intendment, but clear, definite, certain and complete. . . . Eighteen thousand dollars was to be paid when the title was 'perfected,' and forty thousand dollars on or before five years. Does the pleader want us to understand there was no contract provision relating to security for deferred payment, or for providing for evidencing it in any way, or regulating interest; or, if security was to be given in the form and nature of a mortgage, that the contract was silent on the terms and provisions of such mortgage? All these things are material in specific performance. The same equity that does nothing by halves will not perform

blindly. Before it acts, it must see what is contracted to be done and do that, no more nor no less, or do nothing.''

The applicable equitable principle is thus aptly stated by WILLIAMS, J., in Henry v. Adkins (Mo.), 194 S. W. 267: ''Equity does not delight in supplanting indefinite, vague, and ambiguous terms of a contract with clear and definite ones, so that upon the definite terms thus produced by forced or strained construction it may in the same breath exert its power of specific performance. On the other hand, it requires that the parties come into court and ask its aid in merely enforcing those terms which the parties themselves have made clear and definite.''

It appears to be the consensus of judicial opinion and authority, as disclosed by the decisions of the appellate courts of other states, as well as by the aforecited decisions of our own court, that, where a contract for the sale of lands provides for deferred payments of the consideration, the times when such deferred payments are to be made, and the respective amounts of such deferred payments, are essential parts of the contract, and, if such times and amounts of payment be not definitely and certainly fixed by the contract, the contract is indefinite and incomplete, and cannot be specifically enforced in equity. [Buck v. Pond, 126 Wis. 382; Berry v. Wortham, 96 Va. 87; Moore v. Galupo, 65 N. J. Eq. 194; Williams v. Stewart, 25 Minn. 516; Wright v. Raftree, 181 Ill. 464; Platt v. Savings Bank, 46 Conn. 476; Burnett v. Kullak, 76 Cal. 535.]

II. But it is contended by plaintiffs (appellants here) that they have the unquestionable right to waive any provision of the contract which was made for their benefit, and that the provision of said contract wherein plaintiffs agree to give their notes for $800, evidencing part of the purchase price or consideration, secured by deed of trust upon the real property sold, is a provision of the contract which was made solely for plaintiffs' benefit. Hence, plaintiffs argue that they may waive such provision of the contract and may tender the whole amount of the consideration in cash, as full performance of the contract on their part. Plaintiffs say that they have waived such provision of the contract, and that they have tendered the entire consideration in cash by asking the court (in the prayer of the petition) to order and direct ''plaintiffs to pay to defendants the price and sum so ascertained by the court to be the reasonable value thereof (of the land).''

We cannot say, however, that the contract provision for deferred payments of one-half of the total consideration, or purchase price of the land, was made for the sole benefit of plaintiffs. It well may have been that defendants preferred the investment of one-half of the purchase price of the land in interest-bearing notes, with payment

thereof amply secured by deed of trust upon the land sold, rather than to receive payment of the entire consideration in cash. Such investment of one-half of the purchase price of the land in interest-bearing notes, payment of which is to be amply secured by deed of trust upon the land, may have been one of the chief inducements causing defendants to enter into the contract of sale. Viewing such contract provision in that light, the provision must be said to have been made for the benefit of defendants rather than for the exclusive and sole benefit of plaintiffs.

It is said in 39 Cyc. 1574, 1575: "Where the contract of sale makes express provision for instalments or deferred payments of the purchase-price, they must be paid in accordance with such provision, otherwise the purchaser is in default and liable therefor to the vendor, unless he waives his right to such payments. . . . A vendor who has stipulated for payment in instalments cannot be compelled to accept payment of any instalment before its maturity, and the purchaser cannot tender the whole of the purchase-price in a lump sum before it becomes due, so as to place the vendor in default on account of his non-acceptance of the tender."

The rule or principle is thus clearly stated in 27 Ruling Case Law 535: "The express provisions of the contract control of course the duty of the purchaser as to the payment of the purchase money. If the contract calls for deferred interest bearing payments to be secured by a mortgage on the land or otherwise, the purchaser has no right to demand that the vendor receive full payment in cash, as this investment of a portion of the purchase money is a right on which the vendor may insist. Nor, for the purpose of placing the vendor in default, has the purchaser the right to make a premature tender of the purchase money."

In Barbour v. Hickey, 2 App. D. C. 207, 212, which was an action for the specific performance of a real estate contract, it was ruled that a purchaser has no right to require a seller to forego his right under the contract to receive notes instead of cash in payment of the purchase money consideration. Said that court, in ruling the matter: "Apart, however, from the objection of delay in making the application, there was no proper tender of performance of the contract on the part of the plaintiff, such as was required by the terms of the contract itself. The tender of the whole amount of the purchase money, within the twenty days, was not what was contemplated by the contract. By the terms of the contract, the defendant Hickey was entitled to receive in cash $2500 of the purchase money, and the balance in three notes, at one, two and three years, to bear interest at the rate of six per cent. This investment of a portion of the purchase money may have been a very material consideration with the defendant Hickey, inducing him to enter into the contract of sale.

Clearly, the plaintiff had no right to require the defendant to forego his right to receive the notes, according to the terms of the agreement.''

It is likewise said in Morgan v. East, 126 Ind. 42, 46; ''A seller may prefer interest-bearing promissory notes to money, for he may regard it as beneficial to him to secure such notes as an investment, and it is not for the buyer to make an election for the seller. But it is immaterial whether the provision for an interest-bearing note was beneficial or was not, for a party who sells property may stand upon his contract whether it is beneficial to him or not; and it is the duty of the buyer to perform his part of the contract as it is written. A tender required by a contract is insufficient, unless it is such as corresponds with the provisions of the contract.''

We are forced to the irresistible conclusion that the provision of the contract, as alleged in plaintiffs' petition herein, to the effect that $800, or one-half of the total consideration for the land, is to be evidenced by notes, secured by deed of trust on said real estate, is uncertain, indefinite and incomplete in that the parties to such contract have failed to express their intention respecting the number, amounts, and dates of maturity of such notes, and also respecting the terms and provisions of the deed of trust to be made to secure the payment of such notes; and, furthermore, that such contract provision was not made for the sole benefit of plaintiffs, so as to be susceptible of waiver by plaintiffs, but that such contract provision was made for the benefit of defendants, as well. There is no clear expression of the intention of the parties respecting the number, amounts, and dates of maturity of the deferred payments of the purchase price of the land, but such matters apparently were left for settlement and agreement upon further and future negotiation between the parties. A court of equity has no right or power to make such contract for the parties, or to bring parties to an agreement upon the definite and ultimate terms and provisions of such contract; hence, the equitable remedy of specific performance sought by plaintiffs herein will not lie under the incomplete and indefinite terms of the contract alleged in the petition, and the demurrer to the first count of plaintiffs' petition was rightly sustained by the learned trial chancellor.

III. The second count of plaintiffs' petition adopts all of the allegations of the first count of the petition, including, of course, the terms and provisions of the alleged real estate contract, and seeks recovery of damages for the withholding of possession of said real property from plaintiffs, together with the monthly value of the rents and profits accruing from said real property. It is quite apparent that the second count of the petition is not an action for recovery of damages for breach,

on defendants' part, of the alleged contract to convey said real property, but that it is an action for the recovery of damages, rents and profits arising wholly out of the occupancy, use, and withholding of possession of said real property by defendants. Therefore, the question of the sufficiency of the second count of the petition, as stating a cause of action against defendants, is dependent upon whether plaintiffs are entitled to the possession and use of said real property under the allegations of the petition and under the terms and provisions of the contract, as alleged in the petition, and such question in turn is dependent upon whether plaintiffs are entitled to a decree in equity for the specific performance of such contract. If plaintiffs are not entitled to a decree for specific performance of such contract (and we have so ruled herein), then it necessarily and logically follows, we think, that plaintiffs, on the one hand, are not entitled to the use and possession of the real property which is the subject of such contract, and that defendants, on the other hand, are not legally chargeable with the payment of damages, rents and profits for withholding the use and possession of said real property from plaintiffs. Otherwise expressing our view, we think that the relief sought by plaintiffs in the second count of their petition is merely incidental to the equitable relief of specific performance sought by plaintiffs in the first count of their petition; that is to say, the second count of the petition, standing alone as the statement of a distinct cause of action, does not allege facts which are sufficient to constitute an independent, separate, and single cause of action against defendants. It seems clear to us that, if plaintiffs are not entitled to a decree for specific performance of the contract under the allegations of the first count of the petition, they are likewise not entitled to the purely incidental relief sought under the second count of the petition, and hence the trial court rightly sustained the demurrer to the second count of the petition.

Plaintiffs having elected to stand upon the trial court's ruling upon the demurrer by declining to plead further, it follows that the judgment *nisi*, dismissing the action at plaintiffs' costs, must be affirmed, and it is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.