SAMUEL L. WIMER and THOMAS BURDEAU, Appellants, v. A. A. WAGNER and JOHN HUTCHESON.—20 S. W. (2d) 650.

Division One, October 14, 1929.

1158

*Abbott, Fauntleroy, Cullen & Edwards* for appellants.

*Leahy, Saunders & Walther* for respondent, Wagner.

*Goodbar & Gilster* and *Wilton D. Chapman* for respondent, Hutcheson.

ELLISON, C.—This is a suit in equity for specific performance of a written contract to convey land. The St. Louis City Circuit Court dismissed the plaintiff's bill with prejudice, and they have appealed.

By the contract the respondent Wagner (whom we shall call the vendor) agreed to sell to the appellants a lot having a frontage of sixty-five feet on Pine Street in St. Louis for a consideration of $157,000, of which $28,000 was to be paid in cash, $110,000 by assuming a first deed of trust on the property, and $19,000 by notes secured

by a second deed of trust. Of the $28,000 cash part of the consideration, $2,000 was paid down at the time of signing the contract. The contract was dated December 31, 1923, and provided the sale should be closed on or before February 10, 1924; and that if not consummated by that date owing to the failure or neglect of the purchaser (appellants) to comply with the terms thereof, the $2,000 deposit should be forfeited to the seller, the seller reserving the option, however, to enforce the contract notwithstanding the purchasers' breach.

Two extensions similarly worded were indorsed on the contract and signed by the parties, one dated February 11, extending "the closing date" from February 10 "to and including February 14, 1924" and the other dated February 14 further extending the time to February 15.

The appellants did not consummate the purchase on February 15, but according to their testimony on that day about noon they telephoned Mr. Paul Jones, Jr., real estate agent for the vendor, saying they would call at his office the next morning, February 16, at nine o'clock "to close the deal," as one of them testified, or prepared "to do something definite" the other one said. The appellant Wimer, who did the telephoning, states Jones answered that would be satisfactory. On the other hand, Mr. Jones tesified that instead of the appellants' calling him he called them and inquired if they were going to close the contract during the day. He says Wimer answered he would be in the following morning, and Jones asserts he replied that would be too late as February 15 was the last day. From the whole record we find the latter version of the incident to be the correct one. It is undisputed that Jones immediately wrote the appellants a letter as follows:

"Referring to your telephone conversation this afternoon in regard to the carrying out of your contract for the purchase of 1121-23 Pine Street, that you would be in tomorrow morning at nine o'clock, I wish to state that I did not consent and cannot consent as I have no authority to make any extension on said contract.

"Yours truly, Paul Jones, Jr."

This letter did not come into appellants' hands until the next morning—February 16. They treated it as a notice from the vendor that the contract had expired and that he would not make the sale. On this theory, they say, although they were ready, willing and able to perform the contract that day and thereafter, yet they made no further tender of performance and did nothing at all about it. Neither did the vendor tender them a deed and demand performance or take further steps to declare a forfeiture, though he kept their $2,000 and about two months later, in April, traded the property to the respondent Hutcheson. Following that, in May, the appellants

instituted this suit. They claim the right to enforce the contract against Hutcheson on the ground that he bought the property with notice of their contract rights.

The appellants make this further claim. They assert that on February 15, the last day for performance under the expressed terms of the contract, the vendor, himself, did not have title to the property, in consequence of which it would have been an idle ceremony for them to have tendered performance on their side. However, they do not say they thought and believed the vendor could not convey title as he had agreed and that they refrained from tendering performance for that reason. On the contrary their testimony was that they requested the two extentions to enable them to finance their purchase and that although they knew the title to the lot stood in the name of another man, Mr. Curlee, yet they were nevertheless intending to offer performance and close the deal on February 16.

The vendor testified he was ready, willing and able to convey and consummate the contract on February 15 notwithstanding Curlee then held the legal title. He had another contract with Curlee under which he was to receive a deed upon doing certain things, and while he had not yet done all these things it was in his power to do them and get his deed any time. As a matter of fact the property was conveyed to him a little over two weeks later, on March 3, which was more than a month before he sold it to the respondent Hutcheson.

The appellants further testified that on or between February 11 and 14 when they procured the two extensions of the contract in suit they were negotiating with the respondent Hutcheson, through his agent, for a sale of the property to him after they got it, and that they disclosed this fact to the vendor's agent Jones; and this in part was admitted on the witness stand by Jones. It is the appellants' contention that Jones refused to allow a further extension to February 16 because he and the vendor wanted to take advantage of this information and trade the property direct to Hutcheson, casting the appellants aside.

The vendor and Jones declared, however, that they were anxious to dispose of the property and that they probably would have permitted the sale to appellants to go through on February 16 if the latter had tendered performance on that day; but that they had no confidence in appellants' ability to finance the deal and felt the property was being hawked about in a way that would injure its market value. As bearing on the vendor's good faith in this regard he showed that when he later sold the lot to Hutcheson the consideration received was about $2,000 less than he would have received if the appellants had consummated their purchase.

The appellant's theory of the law is that time was not of the essence of the contract; and that they had a reasonable time after February 15 in which to perform it. They say they were therefore within their rights when they offered to consummate the purchase one day later on February 16, and that the vendor breached the contract when he refused, through his agent Jones, to permit them to do so. It is their further contention that they were not bound to tender performance and that the tender in their bill or petition is sufficient (1) because of the vendor's said refusal, (2) because he was unable himself to perform the contract—in that he had not acquired title—(3) and because the vendor did not give reasonable notice declaring a forfeiture and offer to perform on his side by tendering a deed. And finally, they particularly insist they should have judgment for the $2,000 deposit in any event—this on the theory that the vendor ought not to be allowed to enforce the forfeiture of that sum provided for in the contract, since he failed to declare a forfeiture and to tender performance on his own side, and was in fact unable to perform.

On the facts we have reached the conclusion that the decree below should be affirmed, except for one modification to be noted later. The general principle is well established that in ordinary contracts for the sale of land equity does not regard time as of the essence of the agreement. [Pomeroy's Specific Performance of Contracts (3 Ed.) sec. 371, p. 794; 36 Cyc. 707; 27 R. C. L. sec. 158, p. 445.]

But while this is so, yet the parties may make time an essential element by express stipulation and even without that when such intention is clearly manifested by the agreement as a whole, construed in the light of surrounding facts. [27 R. C. L. sec. 160, p. 447; 36 Cyc. p. 709; 13 C. J. sec. 783, p. 687; 4 Pomeroy's Equity Jurisprudence (4 Ed.) sec. 1408, p. 3343; 2 Story's Equity Jurisprudence (14 Ed.) sec. 1064, pp. 451-2, and note; Fry's Specific Performance (5 Ed.) sec. 1075, p. 527; 4 Page on the Law of Contracts (2 Ed.) sec. 2108, p. 3663; McQuary v. Mo. Land Co. of Scotland, 230 Mo. 342, 362, 130 S. W. 335, 340; Mason, Trustee, v. Payne, 47 Mo. 517, 519, 520.]

Indeed, it has been said that in determining the intention of the parties "it may be proven by parol, that, at the making of the contract, time was considered as of the essence." [Waterman on the Specific Performance of Contracts, sec. 459, p. 630.] See also King v. Ruckman, 20 N. J. Eq. 316, 354; Nokes v. Ld. Kilmorey, 1 De Gex & Sm. 444. There may be doubt as to whether the rule just stated holds good in every instance—as where the parol evidence tends to vary or impeach the written agreement —but it ought at least to be applicable when and insofar as ex-

trinsic aids to construction of that general character may be resorted to.

There is another rule that bears on the case. In 13 Corpus Juris, section 783, page 686, this doctrine is declared: "But although time is not made of the essence of the contract by express stipulation, it may nevertheless be held to have been so intended from the nature of the contract. A new agreement extending the time of performance of a contract is evidence that the parties considered time material." That the word "material" as used in the foregoing quotation means *essential* is clear from the cases cited in support of the text, Monarch v. Owensboro City Ry. Co., 119 Ky. 939, 85 S. W. 193, 195, and Wiswall v. McGown, 2 Barb. 270, 278, affirmed 10 N. Y. 465. To these may be added King v. Ruckman, supra (20 N. J. Eq. l. c. 354); Wachung, etc., Co. v. Llewellyn, etc., Corp., 96 N. J. Eq. 448, 500, 126 Atl. 326; Merchants' Natl. Bank v. Newark Co., 98 N. J. Eq. 477, 478, 131 Atl. 389. In the New York case the court said:

"Courts of equity have sometimes interposed in favor of parties who were not ready at the day, when in their opinion the time specified in a contract for its fulfilment was not essential. But when a further indulgence is granted it should only be in extreme cases, where a party has failed through some unforeseen accident, or where there is something indicating a waiver of the objection by the other party, . . . It is apparent, however, that the parties to this contract did eventually deem the time material. If they had not, they would not have thought it necessary to extend it by a new agreement for so short a period as from the 1st to the 15th of November. What would have been the use of the extension, if the right of the parties would have been the same without it?"

Now the testimony for the respondents in this case was that when the last extension was granted on February 14 they told the appellants no further time would be allowed. And one of the appellants, Mr. Wimer, admitted on the stand:

"Q. And at that time (February 14) you asked for an extension of twenty-four hours, didn't you? A. No, we asked for an extension of four or five days.

"Q. On the 14th you asked for an extension of four or five days? A. Yes.

"Q. And they refused to give it to you, didn't they? A. Yes.

"Q. And it finally simmered down to your accepting an extension of one day and the contract for that extension was put in writing on the back of both the copy of the contract that you held and the copy of the contract that Wagner held, wasn't it? A. Yes."

Under the evidence and the foregoing authorities it is clear to us that time was of the essence of the contract. The reasoning of the

Wiswall case, supra, is especially applicable—more so than to its own facts. Here there were two extensions, the first for three days, from February 11 to February 14, and the second for only one day, from February 14 to February 15; and that one day extension was accepted by the appellants after discussion and an effort to get four or five days' further time. There was, furthermore, evidence that the appellants' scrambling effort to dispose of the property in advance, or to' borrow a large sum of money on it, was hurting its market value; at least the vendor so considered, and the testimony without substantial dispute shows he did sell later at a loss.

Time being of the essence of the contract it was incumbent on appellants to tender performance within the time required by their agreement. Having failed in that, they are not entitled to the aid of a court of equity unless there be something in the facts to take the case out of the usual rule. [39 Cyc. 1537-8; 25 R. C. L., sec. 136, p. 321; Pomeroy's Specific Performance of Contracts (3 Ed.) sec. 362, p. 773; 5 Pomeroy's Equity Jurisprudence, sec. 2227, p. 4972, sec. 2233, p. 4985; 2 Williston on Contracts, sec. 834, p. 1589; Lanyon v. Chesney, 186 Mo. 540, 552, 85 S. W. 568.]

Appellants contend they were not obliged to tender performance (except in their petition) for three reasons. The first is that the vendor through his agent Jones refused to abide by the contract unless they performed their part on February 15; and they cite cases such as Deichmann v. Deichmann, 49 Mo. 107, 109, holding that where one party to a contract at or before the time for closing gives notice he will not perform his part, the other party is relieved of the necessity of going through the vain and useless ceremony of making a tender as a condition precedent to suing for specific performance. That is the law, but it has no application to a situation where the refusal of the defendant promisor was rightful and conditioned on the failure of the plaintiff promisee to perform. [Starr v. Crenshaw, 279 Mo. 344, 356-7, 213 S. W. 811, 815; Cape Girardeau-Jackson Int. Ry. Co. v. St. & Dev. Co., 277 Mo. 579, 617, 210 S. W. 361, 372.] If, as appellants maintain, time had not been of the essence of the contract and the appellants had had a reasonable time after February 15 in which to perform, we may concede their contention ·would be correct; but as we have ruled to the contrary it disposes of the point.

The next assignment argues that the vendor is in no position to complain of appellants' failure to tender performance on February 15: (1) because he, himself, was not ready and able to perform his part of the agreement that day, in that he did not have title to the lot and could not have made a valid deed; (2) and because he

did not tender performance on his own side. We cannot allow this contention even though we grant for argument's sake the truth of the premises on which it is based.

Appellants stress and seek to apply to the vendor the principle that a party to a contract must be free from default in essential particulars if he would avail himself of a breach committed by the other party—the same rule of which they have run afoul. But that doctrine has reference to claims affirmatively asserted by a complaining obligee founded on the contract and not to mere defenses interposed by the obligor in the nature of a bar, absent facts creating a waiver or estoppel. A defendant, though himself delinquent, may thwart the plaintiff's action by showing the latter has not complied with the agreement —although, if the controversy were turned around and the defendant were complaining, he might be in the same fix. When both parties are in default neither has a cause of action against the other. [13 C. J. sec. 662, p. 614.]

The point is made also that when the vendor is unable to fulfill his part of the contract by reason of some defect in his title, so that a tender would be wholly nugatory, it is sufficient if the vendee be ready willing and able to perform and a tender is unnecessary. This is true when the vendor openly and unconditionally refuses to perform because of his defective title, and perhaps in other instances where the conduct of the vendor, voluntary or involuntary, amounts to an anticipatory breach, as where he sells the property to a third person or is thrown into bankruptcy before the time for performance. [See 3 Williston on Contracts, secs. 1296-1327, pp. 2345-2378.] But it is not true that the vendee is excused from making a tender merely because he *thinks* (even though correctly) the vendor will be unable to perform within the time stipulated. There must be definite acts or facts convicting the vendor in advance of a breach, and where these do not exist, the best and only way for the vendee to show his ability and readiness to fulfill his part of the contract is for him to make a tender of performance.

On this theory it has been held, and we think soundly, that when time is of the essence of the contract the fact that the vendor is unable to convey title as agreed does not excuse a failure of the vendee to tender performance on his side if he would invoke the aid of equity to enforce the agreement. [Pomeroy's Specific Performance of Contracts (3 Ed.) sec. 361, pp. 769-70; McKuen v. Serody, 269 Pa. St. 284, 112 Atl. 460; Kelsey v. Crowther, 162 U. S. 404, 408, 16 Sup. Ct. 808, 49 L. Ed. 1017; Miller v. Shea, 300 Ill. 180, 185, 187, 133 N. E. 183, 185; Kimball v. Tooke, 70 Ill. 553.]

The doctrine just stated is especially applicable to this case for another reason. The appellants knew the condition of the vendor's title. They knew the title stood in Curlee and that the vendor had a contract with Curlee. And yet, knowing this, they testified they intended to offer performance on February 16, one day late. At the time, they did not rely on the status of the title as excusing a tender on their part. In these circumstances they ought not to be permitted to make that claim now. See 2 Williston on Contracts, section 839, page 1604.

As bearing on the proposition that the vendor should have made a tender—to cut off appellants' right to specific performance—the appellants quote the following from 27 Ruling Case Law, section 380, page 626:

"Where a further payment by the purchaser and the conveyance by the vendor are made concurrent stipulations and time is also made of the essence of the contract, the vendor must offer to convey to entitle him to *put an end to the contract* and retain a deposit, expressly made as a forfeit on the failure of the purchaser to perform, though the purchaser has made no offer or tender of such further payment." (Italics ours.)

Whether the respondent vendor should have tendered a deed in order to justify his retention of the $2,000 deposit and validate the forfeiture is one question. Whether such a tender was necessary to defeat appellants' action for specific performance is another and very different question. It is with this latter that we are now concerned. Appellants point to the italicized words in the above quotation and say the paragraph means a vendor must offer to convey if he would put an end to the contract, as against the vendee's right to specific enforcement, even though the latter be in default.

That construction of the language is not correct. The meaning is that the vendor must offer to convey in order to invoke the forfeiture provisions of the contract bringing it to an end and awarding him the forfeit money in the event of a breach by the vendee. This is shown by the case cited in support of the text, Cleary v. Folger, 84 Cal. 316, 24 Pac. 280, 18 Am. St. Rep. 187. The action there was for money had and received. Both the parties to a contract had breached it and the vendee sued for the return of the forfeit money he had paid. The California court held, just as we have held in this opinion, that since both parties were in default neither could compel performance by the other; and it was further ruled that the vendee was entitled to recover the money he had paid. The gist of the case is reflected in the syllabus appearing in 18 American State Report, 187, as follows:

"If time is of the essence of a contract, and each of the parties neglects within the time designated to tender performance thereof, the contract terminates, and any moneys which have been paid thereon may be recovered of the party to whom they were paid."

Finally, on the theory of the California decision just referred to, the appellants insist that even though they be not entitled to specific performance, yet they should at least have judgment back for the $2,000 forfeit money paid by them, on the grounds heretofore mentioned, viz., that the vendor did not tender a deed and declare a forfeiture, and was not ready and able to perform because he had no legal title. We shall not go into this question, because the law will not permit the appellants to convert their action for specific performance into a suit for money had and received. The suit for specific performance is premised on the existence and validity of the contract. A suit for the restitution of the money would be based on the theory that the contract did not exist. It is the general rule that equity having once become possessed of a cause will retain it for the purpose of administering full and complete relief; but that principle ordinarily does not apply when the facts relied on to sustain the equity jurisdiction fail of establishment. The doctrine followed in this State is expressed in 25 Ruling Case Law, section 172, page 346.

"The rule has been laid down that a court of equity will not grant pecuniary compensation in lieu of specific performance unless the case presented is one for equitable interposition such as would entitle the plaintiff to performance but for intervening facts, such as the destruction of the property, the conveyances of the same to an innocent third person, or the refusal of the vendor's wife to join in a conveyance." See also 21 C. J. sec. 123, p. 142; Terry v. Michalak, 319 Mo. 290, 300, 3 S. W. (2d) 701, 705; Heron v. Peisch, 240 Mo. 221, 225, 144 S. W. 413, 414; Mueller v. Wall (Mo. App.), 251 S. W. 119, 121; Falder v. Dreckshage (Mo. App.), 227 S. W. 929, 936.

This question not being properly in the case it was error for the court below to dismiss the appellants' bill with prejudice as regards that issue. It is true the respondent vendor's answer pleaded the appellants' breach and attempted to justify the forfeiture on that ground; but that plea was purely defensive. Whether the appellants are entitled to recover back the $2,000 they paid is a matter that must be determined in another action. Accordingly the decree below is affirmed with this modification: that appellants' bill is dismissed with prejudice except as to their right to sue for the $2,000 forfeit retained by the respondent Wagner if they be so advised; and the cause is remanded with directions to the circuit court to enter its decree accordingly.

Affirmed and remanded with directions. *Lindsay* and *Seddon,* *CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.