JOSEPH B. O'DAY and LEONA O'DAY v. ADRAIN VAN LEEUWEN, BESSIE VAN LEEUWEN, H. L. EMERSON, and MICHAEL BOTTA, Defendants, MICHAEL BOTTA, Appellant.—No. 39522.—190 S. W. (2d) 263.

Division One, November 5, 1945.

*Leslie E. Bates, Calvin & Kimbrell, Walter W. Calvin* and *Bert S. Kimbrell* for appellant.

*Walter J. Gresham* for respondents.

606

BRADLEY, C.—Suit in equity for the specific performance of an oral contract for the exchange of real properties. Decree for plaintiffs and defendant Botta appealed.

Plaintiffs alleged that on or about July 1, 1941, they entered into an oral agreement with the defendant Van Leeuwens to exchange their property located at 512 Kensington Street, Kansas City, Missouri, for certain described lots owned by the Van Leeuwens in Northmoor, a subdivision in Platte County, Missouri; that in accordance with the agreement they conveyed to the Van Leeuwens by warranty deed the Kensington Street property, subject to a deed of trust for $1880.93, and delivered possession; that the Van Leeuwens delivered possssion of the Northmoor property to plaintiffs, but in violation of the agree-

ment, failed and refused to execute a deed to said property to plaintiffs subject to a $400 deed of trust; that the Van Leeuwens, in February, 1942, ousted plaintiffs' tenant from the Northmoor property and took possession thereof.

Plaintiffs further alleged that notice of their interest and equities in the Northmoor property was placed of record in the office of the recorder of Platte County on January 21, 1942; that thereafter, and with notice of plaintiffs' interest in the Northmoor property, Michael Botta (appellant) obtained from the Van Leeuwens a deed to said property "and placed a new incumbrance (deed of trust) thereon in the sum of $600 in place of the former incumbrance" assumed by plaintiffs; that the new deed of trust was owned by defendant Emerson "who took with notice of plaintiffs' interest."

Plaintiffs further alleged that the contract of exchange of property was fully performed by them; that the Van Leeuwens not only failed to make a deed to plaintiffs to the Northmoor property and sold that property to Botta, but that they also sold the Kensington Street property which plaintiffs conveyed to them pursuant to the exchange agreement.

Plaintiffs asked for "a decree canceling the incumbrance on said property (Northmoor) held by defendant Emerson upon such terms as will render plaintiffs liable to assume no more than the original incumbrance of $400.00; that the deed from defendants Van Leeuwen to defendant Botta be canceled; that defendants Van Leeuwen be directed to convey said premises to plaintiffs by good and proper deeds, subject only to an incumbrance of $400.00; that plaintiffs be awarded a reasonable sum for the rental value of said property from February, 1942, to date; that title be quieted in plaintiffs as against the defendants."

The Van Leeuwens did not answer. Botta and Emerson filed separate answers. Botta answered by a general denial, and alleged that he purchased the Northmoor property in June, 1943, from the Van Leeuwens "for a good and valuable consideration"; that at the time of his purchase the Van Leeuwens "were in sole possession; that prior to his purchase the Van Leeuwens had placed on the property the $600 deed of trust owned by defendant Emerson. In his answer Emerson denied generally, and admitted he owned the $600 deed of trust.

The trial court found "that all of the allegations of the petition are true and that plaintiffs are entitled to the relief prayed for"; that defendants Botta and Emerson "took the property (Northmoor) with notice of the interest of plaintiffs therein and stand in the same position thereto as" the Van Leeuwens. The decree provided for recovery for rent, fixed defendant Emerson's deed of trust lien at $400; cancelled Botta's deed; determined title to be in plaintiffs, and contained some other provisions not necessary to mention here.

Botta (appellant) makes the points that the petition wholly fails to state facts sufficient to constitute a cause of action, and that the evidence is not sufficient to support the decree rendered.

In the brief appellant says: "Now, outside of the fact that the plaintiffs, in their amended petition herein, alleged that the contract of exchange, to which reference is made therein, was an oral one, they, in reality, make no further intelligible references thereto; ·as, for example, they do not allege when that oral agreement was to be consummated; whether or not there were certain terms and conditions thereof; whether or not abstracts of title to the realty in question were to be furnished by the owners thereof, whether certain specific incumbrances were to be assumed, and the amount thereof; whether or not the parties thereto were to have time and opportunity to correct any defects which might be found in the respective titles; when the possession of the properties was to be surrendered to each other; or, whether or not there were certain provisions of that oral agreement, which, if not performed by the one or the other, within the time and in the manner specified, would render the same inoperative or unenforceable."

The original petition was filed October 9, 1943, and the first amended, upon which cause was tried, was filed February 11, 1944. Appellant filed answer September 1, 1944. The sufficiency of the petition was not challenged except by an ore tenus demurrer interposed by appellant after plaintiffs had put in a substantial part of their case. An ore tenus demurrer on the ground that the petition does not state facts sufficient to constitute a cause of action does not reach uncertainty or indefiniteness of averment or the defect of pleading legal conclusions, and such demurrer is unavailing, if by reasonable intendment or by fair implication from the facts alleged, or if by a most liberal construction the essential allegations may be inferred. Kern v. United Ry. Co., 214 Mo. App. 232, 259 S. W. 821, l. c. 823; Philibert v. Benjamin Ansehl Co., 342 Mo. 1239, 119 S. W. (2d) 797, l. c. 798, and cases there cited.

On the point based on the alleged insufficiency of the petition appellant cites Story et al. v. American Central Ins. Co., ▮ 61 Mo. App. 534; Lackawanna Coal & Iron Co. v. Long, 231 Mo. 605, 133 S. W. 35; Terry et ux. v. Michalak et ux., 319 Mo. 290, 3 S. W. (2d) 701. So far as the Story case might be pertinent it was overruled in Rodgers v. Western Home Town Mut. Fire Ins. Co., 186 Mo. 248, 85 S. W. 369. In the Lackawanna case and the Terry case timely demurrers to the petitions were filed and sustained, and we might say that the present petition is by no means as vulnerable as the petitions there involved. The ore tenus demurrer to the petition was properly overruled.

Appellant contends that he had no notice of plaintiffs' claims on the Northmoor property, and that his deed thereto is valid regard-

less of any breach of agreement by the Van Leeuwens to convey the property to plaintiffs. The Van Leeuwens conveyed the Northmoor property to Botta June 7, 1943. Plaintiffs, at the time, knew nothing about this. It so happened that about 30 days after this conveyance plaintiff Joseph B. O'Day went to take a look at the property and found that "somebody had bought the place and was fixing the roof", and found that appellant was the purchaser; that he (O'Day) went "right then" to see appellant and that appellant said that, at the time of the sale to him, Emerson (defendant) said that he (Emerson) "had taken care of the whole thing", and that "I (O'Day) would have nothing to do with the place" and that "everything was free and clear", and that appellant said that he was going right over to see Emerson right now." Plaintiff (Joseph B.) further testified that appellant said that he also saw the Van Leeuwens, and that "Van Leeuwen told him the same thing Emerson did", that "I (O'Day) had not a damned thing to do with the place." On cross-examination by appellant's counsel plaintiff (Joseph B.) testified:

"Q. You just went down there, you had heard that he (appellant) had bought the property? A. Yes, sir. Q. And that is the reason you went down to see him? A. Yes, sir. Q. Then as far as you are concerned—then so far as you know, this man Botta never knew anything about this deal, or proposed deal with the Van Leeuwens until after it was all done? A. No, sir; according to his own statement, he said that—he got all hot about it, and I didn't blame him, and he said he was going right over to see Emerson." Counsel for appellant says that on cross-examination plaintiff (Joseph B.) said that "so far as he knew, Botta never knew anything about the deal (plaintiffs') with the Van Leeuwens until it was all done." We do not so construe.

Plaintiffs took the deposition of the Van Leeuwens and introduced these in evidence, and it appears in Mr. Van Leeuwen's deposition that defendant Emerson knew about the exchange agreement between the O'Days and the Van Leeuwens prior to appellant's deed, and that Emerson handled the sale to appellant. In Van Leeuwen's deposition is this: "Q. Did you talk to Mr. Botta yourself? A. Yes, sir. Q. Was Mr. Emerson present? A. Yes, sir. Q. Didn't Mr. Emerson tell him that he could go ahead with it (the purchase), that there wasn't any danger in taking the property? A. Yes, sir. Q. That the O'Days didn't have any interest in it? A. Yes, sir. Q. So you did tell Mr. Botta before you made the trade about your deal with the O'Days, didn't you? A. No, I didn't tell Mike Botta. Q. Emerson told him? Did Emerson tell him? A. Yes. Q. Didn't you just get through telling me that you were present when Emerson was talking to Botta and that Emerson told Botta that O'Day didn't have any interest in it and that he could go ahead and take the property? A. The deal was already made; it was afterwards, after he

served them papers. Q. You mean that Botta had already paid you the money for the place? A. Yes, sir. Q. That was afterwards? A. Yes. You didn't know whether Mr. Emerson and Botta had talked about the thing before the deal, did you? A. No, I didn't. Q. Were you present at any time when they talked before the deal was made? A. No."

Van Leeuwen was equivocal and contradictory, but appellant did not see fit to go on the stand, although he was present in court, and clear up anything. The failure of a purchaser from a fraudulent grantor to testify creates the inference that he refrained because the truth would not ▆▆▆ aid him. Mathews v. O'Donnell et al., 289 Mo. 235, 233 S. W. 451, l. c. 459, and cases there cited.

It will be noted that plaintiffs pleaded that notice of their equities in the Northmoor property was placed of record January 21, 1942, in the office of the recorder of deeds of Platte County, and it appears that appellant did not get his deed to the Northmoor property until June 7, 1943, and that this cause was filed October 9, 1943, a year and 8 months after the instrument was placed of record. Appellant says, however, that the instrument placed of record was not such as to be entitled, under Sec. 3545, R. S. 1939, to be recorded and that, therefore, the recording thereof did not impart constructive notice of its contents.

The instrument placed of record is as follows: "Comes now Joseph B. O'Day of lawful age and upon his oath states that he is the owner of (here is description of the Northmoor property). Affiant states that he purchased said property aforesaid by way of exchange from Andy Van Leeuwen and Bessie Van Leeuwen and was promised a warranty deed to said premises, but the said parties aforesaid failed at the time of exchange and has ever since, although said deed has been demanded, to furnish him with a deed to said premises." The instrument was signed by the affiant, acknowledged and recorded in book 134, p. 361.

Plaintiffs, in the brief, do not contend that the instrument is such as contemplated by Sec. 3545, hence we do not rule the point on the instrument made by appellant. But, regardless of the instrument, the evidence is sufficient to support the chancellor's finding that appellant had notice of plaintiffs'. claims when he got his deed to the Northmoor property. Payne v. C. & A. R. Co., 136 Mo. 562, 38 S. W. 308; Gross v. Watts, 206 Mo. 373, 104 S. W. 30; Barber v. Nunn, 275 Mo. 565, 205 S. W. 14; Mathews v. O'Donnell, supra.

▆▆ Appellant also makes the point that the contract between plaintiffs and the Van Leeuwens to exchange properties was oral and that the evidence was not sufficient to satisfy the statute of frauds. In Smith et al. v. Lore, 325 Mo. 282, 29 S. W. (2d) 91, l. c. 96, the court said: "Indeed, this court has said the testimony of even one witness may be sufficient to establish an oral contract for the conveyance of

land against the statute of frauds, if his story is clear and convincing'', citing Merrill v. Thompson, 252 Mo. 714, l. c. 728, 161 S. W. 674, l. c. 678. The exchange contract between the O'Days and the Van Leeuwens was shown by the evidence of Mr. O'Day, and while the evidence of Mrs. O'Day is not so direct as to the contract, it is nevertheless corroborative. Also, it appears from the evidence that on the part of the O'Days the exchange contract was fully performed.

The judgment should be affirmed, and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.