BRANSON HILLS ASSOCIATES, L.P., Respondent,

v.

Herbert Joseph MILLINGTON and Judy Lynn Millington, Appellants.

No. 19984.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 19, 1995.

Richard L. Schnake, Neal, Newman, Bradshaw & Freeman, Springfield, Souder F. Tate, Branson, for appellants.

Robert W. Stillings, Springfield, for respondent.

PARRISH, Judge.

This is an appeal of a judgment entered pursuant to a settlement agreement. Appellants contend the trial court erred in enforc-

ing the settlement agreement (1) because respondent failed to tender performance of its part of the agreement and (2) because the judgment imposes terms on appellants that were not part of the settlement agreement. The judgment, as hereafter modified, is affirmed.

Respondent is a limited partnership. It and appellants were parties to a contract by which appellants agreed to sell and respondent agreed to purchase certain real estate in Taney County, Missouri. The contract was dated October 14, 1992. The sale was not consummated.

Respondent filed suit for specific performance of the real estate contract. The case was set for trial June 6, 1994. On April 26, 1994, the parties negotiated a settlement agreement. A court reporter was present when the settlement agreement was reached. The agreement was dictated to the court reporter and, thereafter, transcribed. It required the parties to take certain actions prior to June 6, 1994, and for judgment to be entered that date. The judgment was to include directives that would be completed at a June 9, 1994, "closing." Satisfaction of judgment would then be entered.

The subject of the original contract between appellants and respondent was a 70–foot strip of land near the entrance to respondent's real estate development, Branson Hills. Respondent was acquiring the real estate so that Flynn Road, the road leading to Branson Hills, could be expanded. Flynn Road was a two-lane road, 40 feet wide. It was to be expanded to a five-lane road, 110 feet wide.

After respondent brought its lawsuit, appellants contracted to sell real estate that adjoined the 70–foot strip to a third party, Prairie Point. Prairie Point also purchased an option to buy the 70–foot strip if appellants prevailed in the lawsuit. The contract with Prairie Point was conditioned on Prairie Point obtaining financing for the purchase of the property.

The settlement agreement between appellants and respondent provided three options—A, B and C. Option A would apply if Prairie Point acquired the property adjoining the 70–foot strip and exercised its option to purchase the 70–foot strip. Option B would apply if Prairie Point acquired the property adjoining the 70–foot strip but did not exercise the option to purchase the 70–foot strip. Option C would apply if Prairie Point did not acquire the property adjoining the 70–foot strip.

If Option C applied, appellants would be required to convey to respondent the 70–foot strip of land together with a small part of appellants' adjoining land. Respondent wanted the additional land to improve the entrance to Branson Hills.

The settlement agreement further provided that respondent would pay costs necessary "to determine the boundaries of the modified 70–foot strip." That provision was prefaced with the statement that "as far as the surveys are concerned," respondent was "agreeing to do the absolute minimum" necessary for that determination. When the settlement agreement was dictated, respondent's representative was asked if the dictated words were his understanding of the agreement. He said they were, adding, "But, specifically, we'll have corner pins set."

A discussion followed concerning the parties' obligations to provide title insurance and the timing required "to get the surveys done." Appellants imposed the requirement, "Ten days for survey, ten days for title." The parties then agreed "that the surveys are to be completed within ten days and the title insurance commitments will be exchanged within ten days thereafter."

The date of the settlement agreement was April 26, 1994. The descriptions of the tracts of land involved in the transaction were prepared within ten days. The corner pins were set during the third week of May. A proposed judgment was prepared by respondent's attorney and reviewed by appellants' attorney.[1] The proposed judgment was

---

**1.** Appellants were represented in the trial court by a different attorney than the one who repre-  sents them in this appeal.

changed in accordance with suggestions made by appellants.

The proposed judgment provided that appellants would pay one-half of the court reporter's fee for the settlement agreement transcript. On June 2, 1994, appellants' attorney forwarded payment of that amount to the court reporter. Shortly thereafter, the attorney who represented appellants told respondent's representative that he was no longer representing appellants; that someone else would have to schedule the closing. He withdrew as appellants' attorney.

The proposed judgment was not submitted to the trial court. Judgment was not entered June 6. Prairie Point did not obtain the financing it sought. It did not close the transactions that were the subject of its contracts with respondent. The transaction between appellants and respondent did not close on June 9.

Respondent filed its pleading entitled "Motion to Enforce Settlement Agreement and Motion for Judgment and Affidavit in Support Thereof" on June 15, 1994. The trial court heard evidence on the motion September 14, 1994. It found respondent was entitled to the relief requested. On November 8, 1994, the trial court entered judgment enforcing "Option C" of the settlement agreement.

Appellants present two points on appeal. Point I is directed to respondent's duties under the terms of the settlement agreement. It contends that a condition precedent to respondent obtaining specific performance was tender of performance of respondent's obligations under the terms of the agreement; that respondent failed to meet this requirement. Point II is directed to the content of the judgment. It contends the terms of the judgment are not consistent with applicable provisions in the settlement agreement.

### Point I

■ Before addressing Point I on its merits, this court must resolve whether it preserves anything for review. Respondent contends the point does not comply with Rule 84.04(d); that it states no evidentiary basis for the ruling it contends the trial court should have made.

■ Rule 84.04(d) requires that points relied on "state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous." The "wherein" requirement is met by including a statement in the point relied on that "inform[s] the appellate court wherein the evidence at trial supports the position the party asserts the trial court should have taken." *Bentlage v. Springgate*, 793 S.W.2d 228, 229 (Mo.App. 1990).

Point I states:

The trial court erred in enforcing the settlement agreement because Branson Hills is not entitled to specific performance of the agreement, in that it failed to tender performance of its portion of the agreement, which is a condition precedent to seeking specific performance.

As respondent suggests, the point does not identify "wherein" the record on appeal supports the ruling appellants contend the trial court should have made. Point I does not identify what actions respondent was required to take nor what evidence supports the claim that respondent did not fulfill its obligations. Point I, therefore, preserves nothing for appellate review. *See In Interest of S.J.G.*, 871 S.W.2d 638, 641 (Mo.App.1994).

This court may, nevertheless, look to the argument portion of the brief to determine if there was plain error affecting substantial rights which, though not preserved, resulted in manifest injustice or miscarriage of justice. Rule 84.13(c); *Hoffman v. Koehler*, 757 S.W.2d 289, 292 (Mo.App.1988). The issues gleaned from the argument directed to Point I will be reviewed for plain error.

Appellants complain that respondent failed to set corner pins on the real estate that was the subject of the settlement agreement within ten days after the agreement was reached. They also complain that respondent "did not offer to convey the title to the [real estate] on June 9, 1994, or do any of the other things it was required to do in order to close on that day."

The latter complaint is grossly lacking in specificity. However, based on appellate counsel's statements at oral argument, this court infers that the latter complaint is directed to respondent's failure to arrange a conference on June 9, 1994, to close the real estate transaction and its failure to tender a deed to appellants, required by the terms of the settlement agreement, that would change the boundary between tracts of land owned by the respective parties.

Appellants rely extensively on *Wimer v. Wagner*, 323 Mo. 1156, 20 S.W.2d 650 (1929), for the proposition that tender of performance is required by one seeking specific performance of an agreement in which time is of the essence. They urge that, notwithstanding that the transcribed settlement agreement does not specify time being of the essence, the tenor of the agreement warrants that conclusion. The principle upon which appellants rely, as stated in *Wimer*, is: "Time being of the essence of the contract, it was incumbent on appellants to tender performance within the time required by their agreement. Having failed in that, they are not entitled to the aid of a court of equity, unless there be something in the facts to take the case out of the usual rule." 20 S.W.2d at 653. *See also Grose v. Lucas*, 245 S.W.2d 831, 833–34 (Mo.1952); and *Suhre v. Busch*, 343 Mo. 170, 120 S.W.2d 47, 54 (1938).

Respondent has not contested appellants' claim that the terms of the settlement agreement compel the conclusion that time was of the essence as to the performance of its terms. For purposes of discussion this court will address the issues raised by appellants in their argument in support of Point I as though the agreement provides time to be of the essence.

The trial court did not make specific findings regarding the stated obligations of the parties. All fact issues are considered as having been found in accordance with the result reached. Rule 73.01(a)(3).

*The Survey Pins*

■ Appellants contend that respondent failed to comply with the terms of the settlement agreement in that it "did not set the survey pins within ten days of the settlement agreement." They argue that respondent thereby failed to tender performance of the settlement agreement.[2]

Respondent contends the requirement to set corner pins was separate from the requirement to perform survey work sufficient to provide a metes and bounds description of property; that only survey work necessary to provide sufficient legal descriptions had to be completed within ten days.

During the course of dictating the settlement agreement, the transcript of which was admitted in evidence, the statement was made to respondent's representative, "The agreement as far as the surveys are concerned is that [respondent] is agreeing to do the absolute minimum that's necessary as far as surveying is concerned in order to determine the boundaries of the modified 70–foot strip and the modified tract S–2(B) and nothing more than that." Respondent's representative was asked, "Is that your understanding of the agreement, Mr. Stoner?" He answered, "Yes. But, specifically, we'll have corner pins set."

Later, in the course of completing the agreement, the statement was made, "The agreement as far as the survey and title insurance is concerned is that [respondent] will proceed as rapidly as possible to get the surveys done and that within ten days after the surveys being completed the parties agree that they'll provide title insurance commitments to the other party."

After more discussions the statement was made, "Off the record we've had further dis-

**2.** Respondent argues that this issue cannot be pursued on appeal because it differs from the theory upon which this case was tried. Respondent says the theory which appellants submitted to the trial court in opposition to the granting of the motion to enforce the settlement agreement was that, time being of the essence, respondent failed to appear at the time set to close the agreement, June 9, 1994.

There was testimony that the corner pins had been staked. One of respondent's general partners, William E. Stoner, testified he went to the property to see if the corner pins were staked and they were. Joe Millington, one of the appellants, testified that he watched a crew set the corner pins during the third week of May. The issue was before the trial court.

cussions about the survey and the title insurance policies and I understand it's agreeable with the parties that the surveys are to be completed within ten days and the title insurance commitments will be exchanged within ten days." The parties were asked if that was agreeable. All stated that it was.

There was evidence before the trial court that would support a finding that the terms of the settlement agreement required the survey to be completed for purposes of providing a metes and bounds description for the applicable tracts of real estate within ten days next following April 26, 1994, but that the setting of corner pins was not required to be accomplished within that time. That determination would be in accordance with the result reached.

■ Likewise, the trial court could have determined that if the terms of the agreement required the corner pins to be set within ten days following April 26, 1994, failure to do so did not involve a substantial failure in performance by respondent. Specific performance may be granted in spite of a minor breach by the party seeking that relief. *Luker v. Brockmiller*, 622 S.W.2d 715, 716 (Mo.App.1981). That finding would be in accordance with the result reached by the trial court.

### The Closing Date

■ Appellants' discussion of the requirements of *Wimer* and its progeny regarding when a party to a contract in which time is of the essence may seek specific performance dwells on only part of the principle enunciated by those cases. Appellants recite the part of the litany of *Wimer* that requires tender of performance by one seeking specific performance without discussion of the concluding stanza, "unless there be something in the facts to take the case out of the usual rule." 20 S.W.2d at 653.

The settlement agreement provided for judgment to be taken June 6, 1994, and for a "closing" on June 9, 1994. The parties proceeded in accordance with the terms of the settlement agreement without adverse incidents until shortly after June 2, 1994.

Respondent's attorney had submitted a proposed judgment to appellants' attorney. Appellants' attorney suggested changes that were made. On June 2 appellants' attorney submitted payment of one-half of the court reporter's fees for preparing the transcript of the agreement. Later, appellants' attorney told respondent's representative, William Stoner, that the attorney no longer represented appellants; that someone else would have to schedule the closing.

Mr. Stoner talked to Mr. Millington on more than one occasion on June 9. He asked Mr. Millington if he was ready to close with respondent. Mr. Millington said he was not. In a telephone conversation Mr. Millington acknowledged that the sales negotiations with Prairie Point would not be concluded that date; that he had granted Prairie Point an extension. Mr. Stoner testified, "He kept saying that he wasn't going to get stuck with this or wasn't going to get hung out, I believe was his term, and I assured him that nobody was trying to do that to him." Mr. Stoner told Mr. Millington "that if he needed a little time to get it together, that would be okay with [respondent]."

Mr. Stoner asked Mr. Millington, "[W]ould it make you feel better if I'd send you something that says that it's okay that you're not ready to close?" Mr. Millington told him, "Well, send me something." Mr. Stoner faxed a memorandum to Mr. Millington at a fax number Mr. Millington provided. The memorandum stated that the closing date would be extended. It was received at 4:48 p.m. At 5:01 p.m. Mr. Millington faxed a reply stating he did not agree to an extension.

Under these facts, this court holds it was unnecessary for respondent to have taken further actions with respect to tendering performance of its obligations under the settlement agreement it now seeks to enforce. For respondent to have done anything further would have been a useless act; something the law does not require. *Fireman's Fund Ins. Co. v. Panco Forwarding, Inc.*, 739 S.W.2d 543, 545 (Mo. banc 1987); *In Interest of A.R.M.*, 750 S.W.2d 86, 94 (Mo. App.1988) (Karohl, J., dissenting); *Darr v. Structural Systems, Inc.*, 747 S.W.2d 690,

694 (Mo.App.1988); *Shine v. Southwestern Bell Telephone Co.*, 737 S.W.2d 203, 205 (Mo.App.1987); *Custom Craft Tile, Inc. v. Bridgecrest, Inc.*, 687 S.W.2d 248, 250 (Mo.App.1985). Point I is denied.

### Point II

Point II contends the trial court erred in including in its judgment the requirement that the land to be conveyed to appellants shall be "subject to all easements and/or rights of way." Appellants argue that the settlement agreement does not require them to accept conveyance of property encumbered by all easements or rights of way.

The judgment orders certain land to be conveyed by respondent to appellants and other land to be conveyed by appellants to respondent. The descriptions of the land to be conveyed include the words "subject to all easements and/or rights of way." Respondent acknowledges that the terms of the settlement agreement require the conveyance to be "free and clear of all liens and encumbrances and easements" and requests this court to modify the trial court judgment as permitted by Rule 84.14.

As requested by respondent, the phrase "subject to all easements and/or rights of way" is deleted from Exhibit B and Exhibit C that are made part of the judgment heretofore entered. The judgment is herewith modified in that respect pursuant to Rule 84.14. Point II is denied. The judgment, as modified, is affirmed.

PREWITT, P.J., and SHRUM, J., concur.